## NAREMORE et al. v. BEENE MOTOR CO. et al.
### No. 4984.

Court of Appeal of Louisiana.
Second Circuit.

March 8, 1935.

Craig, Bolin, Magee & Baucum, of Mansfield, for appellants.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

DREW, Judge.

In this case the learned judge of the lower court, in a well prepared opinion, has correctly stated the issues, correctly found the facts and applied the law applicable thereto. The opinion is as follows:

"This is a suit instituted by plaintiffs, husband and wife, seeking to recover from the defendants, in solido, the sum of $20,300 for the death of their minor son, Thomas Marlin Naremore, who was killed in an automobile accident on the 20th day of October, 1933, about one mile west of the town of Haynesville, Claiborne parish, La., on the Haynesville-Shongaloo Highway.

"The case was tried on the merits, and submitted on arguments and briefs filed.

"The plaintiffs alleged, and the evidence shows, that plaintiffs' son, Thomas Marlin Naremore, at about 4:30 p. m., on the above date was driving an automobile east on said highway in company with Miss Mary Lowe and Miss Mary Wroten, all three being seated on the front seat of said automobile; that the defendant, John Baird, who was an employee of the Beene Motor Company, Inc., was driving an automobile west on said highway in company with Relman Harp and Howard Harp, the said Relman Harp being seated on the front seat with John Baird and Howard Harp being on the back seat of said car. That two automobiles collided; that said collision occurred on the south side of said highway near the home of T. W. Perkins and across the highway from and east of the residence of C. W. Seegars. That said accident killed instantly Thomas Marlin Naremore, Mary Lowe, and seriously injured Mary Wroten.

"The plaintiffs allege in their petition that the defendant John Baird was driving as the employee of the defendant, the Beene Motor Company, Inc., and in the course of his employment, and that the other defendant, the Travelers' Insurance Company, had issued a policy of insurance in favor of the Beene Motor Company, Inc., protecting it and third parties from injury caused by its employees while driving automobiles within the limits of said policy. They further allege that their son was driving on his right side of the highway at a moderate rate of speed, and that the said defendant, John Baird, was driving on his left side of the road at a rate of speed in excess of 50 miles per hour, without keeping a proper lookout, and attempted and did turn to his left in an effort to leave the highway and enter a side road which led to the home of Relman Harp; that his said actions in turning to his left placed his, Baird's, automobile in the path and in front of the automobile driven by their said son; and that said actions and his failing to keep a proper lookout were negligent and that his carelessness and negligence was the cause of the collision, and for these reasons the three defendants are liable to the plaintiffs for the death of their son and for his burial and funeral expenses alleged to be the total of $20,-300.

"The defendants deny liability, and the defendants Beene Motor Company, Inc., and the Travelers' Insurance Company deny that the defendant John Baird was engaged in his employment at the time of the accident or that the accident occurred in the course of his employment. The defendants admit that the collision and accident occurred, and that the plaintiffs' son and Mary Lowe were killed and that Mary Wroten was seriously injured. All of the defendants allege that the accident and the death of plaintiffs' son was caused by the negligence of the plaintiffs' son in that he was driving on his left side of the highway, and that at the time John Baird was driving on his, Baird's, right side of the highway, and he, Baird, seeing that plaintiffs' son would, if he continued on, drive his, the said plaintiffs' son's automobile head-on into the automobile driven by Baird, and that Baird, in order to prevent a collision, and because of the emergency caused by the plaintiffs' son, turned his, Baird's, automobile to his left and about the same time, the said Thomas Marlin Naremore turned his automobile to his right and thus caused the accident, and pleads contributory negligence on the part of Thomas Marlin Naremore.

"The testimony in this case, as in most cases growing out of automobile accidents, is conflicting, but there are some facts established by the evidence and documents filed in evidence about which there is no serious dispute; namely, that both automobiles were being driven very fast at about 50 miles per hour; that the road on which they were traveling runs east and west; that the road or highway is graveled and about 15 or 20 feet wide, that is, the graveled portion of same; that an automobile being driven 50 miles per hour, on the north side of the highway going west, meeting an automobile being driven at the, or about, the same rate of speed on the north side of said highway going east, could not pass to the right of said automobile, because of a ditch, a tree, mail box, the grade of the road, the grade of the yard of C. W. Seegars; that the accident occurred on the south side of the highway, and that the left front portion of the Naremore car struck the right side of the Baird car, and that the Naremore car stopped facing west on the south side of the road, and the Baird car stopped facing about south, practically off the gravel highway.

"As the court views the case, and I might say that I have visited the scene of the accident on two occasions since the trial of the case in order that I might better understand the conditions and surroundings, I find that there is a slope in each direction from the point of the accident, the accident having occurred on the crest of the grade or hill, and that an automobile going west cannot see an approaching automobile the same distance from the top of the hill until one of the cars or both reach a point within 200 feet of the crest of the grade.

"The plaintiffs contend that their son was driving on his right side of the road, that is, that he was driving on the south side of the road, and they produce two witnesses to establish this contention; Mrs. C. W. Seegars and Miss Mary Ricketts. Miss Mary Wroten, the only survivor from the Naremore car, testified, but says that she does not know which side of the road the Naremore car was on and was not looking at the road or the manner in which the car was being driven, but was looking at a list of clothes that Naremore was to deliver. Miss Ricketts testified that she was walking on the north side of the highway with her head down and that the Naremore automobile passed her when she was between the residence of H. O. Seegars and Mr. Ware, which made her some 400 feet west of the point of the acci-

dent and that she continued to walk west and did not turn to look back after the Naremore car passed, and that at the time it passed her, it was on the south side of the road. She did not see where it went after it passed her, and for that reason did not know whether it kept its course or not. She did not see the accident. Mrs. C. W. Seegars testified that she was in her dwelling, which is located on the north side of the highway; that she was in the southwest room of her dwelling, sewing on a machine; that the machine was facing west, and that she was facing west and from the west window in front of her, she saw the Naremore automobile before it reached her house, and she then turned and looked out the south window of her room and saw the car again, and that the car was on the south side of the road; she did not see the Baird car and did not know what caused the collision at the time. She also testified that she told several persons just after the accident that the Naremore car was on the wrong side of the road, but afterwards, that night after discussing it with her husband and explaining to him where the car was, she found that she was mistaken.

"The plaintiffs placed on the witness stand a Miss Perkins, who gave testimony. Miss Perkins was very nervous while testifying and did not tell a very connected narrative of the accident. From her testimony, it seems that she was in her front yard and near the point where the automobiles collided, that she was busy picking up pecans. She saw the Baird automobile about the time it passed in front of her and that it was on the north side of the road, saw the Naremore car about the time the two cars collided and that it was on the south side of the road at the time.

"The defendants had three witnesses who saw the accident and all of whom testified that the Naremore car was on the north side of the road until just before the collision, and that Naremore suddenly turned to the south within a few feet of the point of collision. Mrs. H. O. Seegars, one of these witnesses, testified that she was on her front porch, which is located about 200 feet west of the residence of C. W. Seegars on the north side of the highway, and that she saw the Naremore automobile coming from the west; that, when she first saw it, Naremore was on the north side of the road and as he passed Miss Ricketts he turned to his right in order to pass her, and then gradually drove over to the north side of the road again, and just before the accident, he turned to his right and the collision occurred. She did not see the Baird car until the collision. Relman Harp,

who was riding with John Baird, testified that he saw the top of the Naremore car as they were going up the grade and that at the time thought that it was standing still, that it was on the north side of the road and that Baird was driving on the north side of the road and as the two cars approached each other, they both turned to the south side of the road and the collision occurred. John Baird's testimony was to the same effect as that of Relman Harp. Baird says that he was driving on the north side of the road and saw the Naremore car coming, facing him on the north side of the road and Naremore failing to turn, he, Baird, turned to his left in order to avoid a collision, and just after he turned Naremore turned, and the collision occurred. This is in effect the testimony of all the witnesses who were near the accident and saw any part of the tragedy.

"The contention of the plaintiffs' attorneys in their petition, in oral argument, and in briefs, is that Baird did not turn to avoid a collision, but was leaving the highway for the purpose of entering a side road that led to the home of Relman Harp on the south side of the highway. There is no testimony to bear out this contention, and on the other hand, John Baird says that he was going to the home of O. G. Harp, which is located several hundred feet west of the point of the collision, and that he did not know where Relman Harp lived; had never been into the side road. Relman says the same in substance, and the little boy, Howard Harp, testified that he was going to his father's home, that is, to the home of O. G. Harp, and further from a view of the scene and the road leading to the home of Relman Harp, the condition of this road, I am convinced that a person driving 50 miles per hour, as alleged Baird was driving and as admitted by him, could not enter this side road. The photographs filed in evidence and marked "Plaintiffs 3" and "Plaintiffs 4" show the entrance to this road.

"If Naremore was driving on the north side of the road, as testified by Baird, Relman Harp, and Mrs. H. O. Seegars, and Baird was traveling on the north side of the road, which was his right side, and, acting as a reasonable person would act under the circumstances, believed that it was necessary to turn to the left to avoid the accident, he was not guilty of negligence and the plaintiffs could not recover.

"There is some testimony to the effect that Baird stated that he did not see the Naremore car until he was right on it. These

statements were made shortly after the accident and while he was suffering from shock and while he was under the influence of narcotics, which his physician had given him to quiet him.

"If it is a fact that he did not see the Naremore car until he was within ten feet of the same, as one witness testified, he could not have turned for the very simple reason he would not have had time, as the two cars were meeting each other at the rate of 100 miles per hour or about 145 feet per second, and all the facts and evidence show that he did turn to his left. The two cars did not hit head-on; the Naremore car was damaged on the left front and the Baird car on the right side of his car. And further, if Baird was not keeping a proper lookout and did not see the Naremore car until it was too close to avoid the accident, and was negligent in that respect, still the plaintiffs cannot recover if in truth and in fact the Naremore car was on the north and wrong side of the road when it approached the crest of the hill.

"The court is of the opinion and was so convinced at the trial of the case that the witnesses who were present at the time of the accident were honest in their testimony, but it is a well-known fact that when an occurrence of this kind happens and several witnesses are present, it is a rare thing if all see the same thing in the same way. Each witness has different viewpoint, some one thing would attract one witness while another thing would attract another, and they would of necessity differ in their testimony and at the same time each would be testifying to what he or she saw and the way it was seen by them.

"The court is of the opinion that the witnesses for the defendants had a better opportunity and were in a better position to see the entire occurrence than did the witnesses for the plaintiffs. Mrs. H. O. Seegars was on her front porch, nothing to obstruct her view. Relman Harp was on the front seat with John Baird, nothing to obstruct his view, and John Baird was driving the car and could have seen the Naremore car when first it reached a point over the crest of the hill which made it visible. On the other hand, Mrs. C. W. Seegars was in her room, sewing, and her view was cut off for more than 100 feet when the car passed the corner of the house, and Miss Ricketts had her back turned to the cars after the Naremore car passed her, and, in view of these facts, the court is of the opinion that the plaintiffs have failed

to make out their case in that they have failed to establish that Thomas Marlin Naremore was free from fault and negligence, and finds further that John Baird acted in a sudden emergency and acted as a reasonable person and turned his automobile to the left in order to prevent a collision, and that this emergency was caused by the negligence of the driver of the Naremore car, and, for these reasons, the demands of the plaintiffs will be rejected at their costs.

"Enos C. McClendon,
"Judge, Second District Court,
"Claiborne Parish, Louisiana."

A judgment was signed in accordance with the above opinion, from which judgment plaintiffs appealed to this court.

We find no error in the judgment of the lower court, and it is affirmed, with costs.