## JACOB v. EDWARDS et al.

### JONES v. SAME.

### Nos. 5189, 5190.

Court of Appeal of Louisiana. Second Circuit.

Dec. 11, 1936.

J. B. Crow, of Shreveport, Sholars & Gunby, of Monroe, and Todd & Todd, of Bastrop, for appellants.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

DREW, Judge.

The causes of action declared upon in these cases arose when the Chevrolet coupé of S. L. Jones, by him driven, collided with a 1½-ton truck of defendant J. H. Edwards, then operated by his agent, Jap Arant, in broad daylight on the Hamburg-Bastrop graveled highway in Morehouse parish. Jones died from the effect of the collision immediately thereafter, and his brother-in-law, Tandy E. Jacob, riding with him at the time, was seriously injured. He and the widow of Jones by separate actions sue Arant, Edwards, and his insurer, the Travelers Indemnity Company, for damages.

The coupé was traveling southerly; the truck was proceeding northerly. The collision occurred on a tangent of the highway several hundred feet in length and about the center thereof. The specific acts of negligence charged to the truck's operator, alleged to be the sole causes of the collision, are: That he was driving at a reckless rate of speed and upon his left-hand side of the highway in violation of the rules of the road and the traffic laws of the state; that, because of said excessive, illegal, and reckless speed, Arant was unable to maintain control of the truck. Defendants deny all the allegations of negligence directed against Arant, and affirmatively plead that Jones at the time of the collision and for a considerable distance up the road was driving his coupé on the east side thereof, the side, at the time and under the circumstances, the truck had preference to occupy; that the coupé, moving at a rapid rate of speed, and the truck approached each other on the same (the east) side of the highway, the combined speed being conservatively estimated at 60 miles per hour. In amplification of these alleged facts, defendants further plead:

"* * * That on account of the dangerous condition and situation created by

S. L. Jones and acquiesced in by plaintiff, and solely, only and proximately through the negligence of the said Jones and plaintiff, Jap Arant, in an effort to avoid a collision, turned and cut the truck driven by him to his left, and at about the same time S. L. Jones turned and cut his car to the right and said truck and car collided near the center of the Highway.

"12. That it was impossible for defendant, Jap Arant, to turn to the right due to the presence of a culvert and deep ditch which border the Highway on the east side, at or near the scene of the accident, and that Jap Arant at all times remained on the extreme east side of the Highway until he turned to his left on account of the sudden and unexpected emergency caused by the fault of S. L. Jones and plaintiff; that under said circumstances there was no time for deliberate thought and defendant, Jap Arant, acted in an emergency created by the gross fault and negligence of plaintiff and the said S. L. Jones, as aforesaid."

It is further averred that under the circumstances Arant did everything possible for him to do to avert the impending collision. The cause of the accident and its tragic results are definitely charged to the negligence of Jones for the ·reasons above related. In the alternative, the contributory negligence of Jones and Jacob is urged in bar of recovery in either suit.

The lower court rejected the demands in both suits, and plaintiffs have appealed.

■ Whether defendants are liable or not turns upon the primary question of fact elaborately discussed by both sides in oral argument and written brief. It is, Did Jones drive his coupé along the east side of the highway as he approached the oncoming truck to within so short a distance therefrom that a collision was inevitable? The lower court answered that question in the affirmative. We think this disposition of the matter manifestly correct.

The Jones car stopped briefly at the Log Cabin filling station, which is about 500 feet north of the locus of the .collision, and then resumed travel down the road at a rate of speed not exceeding 25 miles per hour. The testimony, which we shall hereafter discuss, convinces us that from the time the coupé left this filling station until the collision, or a fractional part of a second immediately prior thereto, it followed its left (east) side of the highway.

The truck, with trailer attached, going at not more than 45 miles per hour, had just emerged from a gradual curve south of the place of collision, and for at least 350 feet below that point was in open view of traffic then south of the Log Cabin filling station. It was keeping the east side of the highway.

Five witnesses involved in or who saw the collision gave evidence on trial of the case. These were Arant and a negro minister riding in the truck, Jacob, plaintiff, and N. M. Johnson and his son, Elmo.

■ Mr. Jacob testified that, after leaving the filling station, Jones drove the coupé along the west (his right) side of the road and so continued until the truck, after rounding the curve 300 feet away, swerved slightly to its right and, quoting his own words, "then back to the left and directly into the car." The negro minister, as a witness for plaintiffs, testified that he was picked up by Arant a short distance · from the place of accident; that the truck was driven very fast, causing mud to be thrown on his right foot, and says, "When I looked at my foot there was a quick surge to the left and I knew nothing more until I found myself in a car here at Mr. Jacob's." He never saw the Jones car prior to the collision, because he was rather busily engaged in trying to protect his feet from the falling mud. Arant says that, after rounding the curve, he observed the Jones car coming toward him on its left side of the highway about 150 yards distant. He was on his own right side of the road and continued that ·line of travel, assuming, as he had the right to, that the coupé would resume its proper position on the highway, and continued to so assume until, quoting his testimony, "within 20 or 25 yards of him and he was still on my side of the road, and I saw he wasn't going to attempt to do anything and I couldn't go to the right on account of the culvert and washout, and I tried to pass him on the left and tried to avoid the accident, and as I cut my wheels to the left he cut to the right trying to get on his side of the road, and the collision happened practically in the middle of the road, probably a little nearer on my side."

N. M. Johnson and his son, Elmo, were at their filling station, approximately 100 yards from the accident, and both testified that, as the Jones car passed their place, it was on its left side of the highway and never deviated its course until within a

few feet of the truck, when it was suddenly cut to its right, as testified to by Arant. The testimony of these two witnesses favorably impresses us. There appears no reason whatsoever for them to wish to distort the true facts of the case. They certainly have no interest in its outcome. In addition to this testimonial proof, the position of the cars after the collision and the locus of injury to each strongly corroborates the defendant's theory of the accident. The right front end of the truck and the left front end of the coupé rammed each other. The damage to the front of each vehicle was considerable. The coupé was knocked completely around. Its position was reversed. It rested on the west side of the road, facing north, with both left wheels in the ditch. The truck rested in the ditch on the west side of the road, southwesterly from the coupé, while the trailer remained on the highway. A simple application of the laws of physics explains why the cars rested as and where they did after the impact. The truck and trailer, being the heavier and moving more rapidly than the coupé, caused its position on the road to be reversed. Striking it, under these circumstances, about its left wheel, caused it in a general way to suddenly describe a semicircle. The force of the impact was sufficient to check the truck's velocity to such an extent that its course was diverted to the west. It seems clear, in the light of all these undisputed facts and circumstances, that, if the coupé had been on its right side of the highway when rammed by the truck, it would have been knocked entirely off the west side of the road.

The only reason offered to explain why Jones held the east side of the road, as the testimony discloses, is that to do so he would avert driving through a mudhole 83 feet north of the place of collision, and a few feet north of a culvert across the highway. It appears that this mudhole extended from the road's center to its west side. Jones and Jacob knew the conditions there intimately. It is possible that in watching the road closely about this mudhole and the nearby culvert Jones for a few seconds became oblivious to traffic south of him. If he observed the truck, it is not improbable that he believed he could go around the mudhole, cross the culvert, and then safely gain the west side of the road without danger of collision.

 Arant was confronted with a sudden emergency not of his making. It was but a natural human impulse to do something to try to avoid the collision or reduce its consequences. He could not safely cut his ponderous vehicle to the right because of hazardous physical conditions. He knew a head-on collision was inevitable if he did not alter the truck's course; therefore, impelled by the dictates of the situation, he instantaneously cut the truck to his left, hoping the coupé would not alter its course, and possibly pass on his right unharmed. Even in these circumstances, should it be held that Arant erred in forming and executing a sudden resolution, he would be excused from liability of its consequences. In such circumstances a motorist is not held to the exercise of that unerring judgment and resolution that would be expected of him when acting deliberately. Willis v. Standard Oil Company, 17 La.App. 217, 135 So. 777; Lacy v. Lucky et al., 19 La.App. 743, 140 So. 857; Abel et ux. v. Gulf Refining Company (La.App.) 143 So. 82; Naremore et al. v. Beene Motor Company (La.App.) 159 So. 426.

But we do not think he erred. He executed the only movement open to him.

For the reasons herein assigned, the judgments appealed from are affirmed, with costs.