No. 819

First Circuit

WILLIS v. STANDARD OIL CO. OF LA.

(June 30, 1931. Opinion and Decree.)

Newman & Jones, of Leesville, and Spearing, McConnell & McClendon, of New Orleans, attorneys for plaintiff, appellee.

Thompson & Ferguson, of Leesville, attorneys for defendant, appellant.

ELLIOTT, J. Dr. Daniel O. Willis claims of the Standard Oil Company of Louisiana the sum of $778.75, as the result of a collision between an automobile belonging to him called the Hudson and a large heavy truck belonging to the defendant. The plaintiff claims $578.75 of the amount stated on account of damages alleged to have been done to his car in the collision and $200 as loss sustained as a result of having been deprived of its use.

The collision occurred during the evening of February 2, 1929, on the principal street of the town of Leesville, La., called Third street. This street is also a state and federal highway.

The collision took place while plaintiff's automobile was being driven by his daughter, Miss Pearl Willis. Defendant's truck was at the same time being driven by Grady Martin, one of its employees.

Plaintiff alleges that the collision was caused solely by the fault, carelessness, negligence, and recklessness of the driver of defendant's truck, in coming out of the Standard Oil Company's station, situated on the western side of Third street, through its private driveway, into the street, in front of his car, forcing a collision.

Defendant denies the negligence, carelessness, and fault alleged against it by the plaintiff and charges, in turn, that its truck was being driven at the time in a proper, cautious manner, and that the collision was due entirely to the fault, negligence, and carelessness of the driver of plaintiff's automobile. Defendant specifically alleges that the brakes on plaintiff's automobile were defective and did not efficiently perform the service for which they were intended.

The answer contains a reconventional demand. The trial resulted in a judgment in favor of the plaintiff and against the defendant for $578.75 with interest, that being the amount which the plaintiff claims as damages sustained by his car and is presumably on that account. The item claimed by plaintiff for the loss of the use of his car and defendant's demand against the plaintiff in reconvention are not mentioned in the judgment and may therefore be looked on as having been rejected.

The defendant has appealed. The appeal was not answered. Our review is there-

fore confined to the correctness of the judgment rendered.

The pavement on Third street of the town of Leesville is 24 feet wide.

A diagram of the street shows an additional width on each side of the pavement called a "shoulder," which varies in width from 12 inches to 3 feet.

Defendant's truck came out from a private driveway leading from defendant's oil station to the street. This driveway was on the west side of the street. The truck was 17 feet and between 6 and 8 inches in length.

Miss Willis, the driver of plaintiff's car, was going south on the street, while defendant's truck after it entered into the street proceeded to cross it, taking an angling course making a left-hand turn; its purpose being to go north on the street.

Due to the width of the pavement, 24 feet, and the length of the truck, 17 feet and between 6 and 8 inches, and the course it pursued, it occupied almost the entire width of the street in its effort to get out on the east side, the side on which it belonged in order to be on its right side going north.

Plaintiff's automobile was on the right-hand side of the street, which was the side it belonged, in going south, but suddenly turned sharply to the left where it struck the motor of the truck; the motor being at the time within about 2 feet of the pavement on the east side of the street. At the time of the collision the evidence shows that defendant's truck in entering and crossing the street proceeded very slowly, probably about 5 miles an hour, but a doubtful question is as to the speed at which plaintiff's car was being driven at the time. We do not find any satisfactory evidence on the subject. Plaintiff avers in article 4 of his petition that his automobile was being driven "in a safe and scientific manner and that his daughter did not contribute to the said accident."

Defendant in its answer denies this averment, but it is not alleged that plaintiff's car was being driven at excessive speed, nor that the collision was caused in that way.

Miss Willis testified that when she first saw defendant's truck come out of the private driveway into the street ahead of her she imagined she was going about 20 or 25 miles an hour. She was accompanied by a young gentleman friend who sat with her on the front seat, the back seat being occupied by another lady and young gentleman friend as guests. These parties, questioned about the speed she was making at the time the truck first came into view ahead of them, were not more definite than their host.

The distance from them to the truck is also very indefinitely stated by them. Miss Willis says on the subject:

"Q. Did you, from the time you crossed Cavanaugh Avenue, which is the first street north of the Standard Station, at any time look from the street?

"A. No.

"Q. From the time you saw the truck approaching the street, did you at any time look away?

"A. No.

"Q. Now, you were a half block or something of that sort when you first saw the truck coming out of the station?

"A. Yes.

"Q. Now, it continued to drive up on the street without stopping?

"A. Yes, sir.

"Q. When did you first apply your brakes?

"A. When I first saw it.

"Q. How much speed were you making then?

"A. About the same, not over 25 miles.

"Q. Did you try to stop the car then?

"A. I thought I would just slow up and go behind him at first and then he kept moving.

"Q. How slow were you going when you saw you couldn't go behind him?

"A. I don't know.

"Q. Were you getting to 10 or 15 miles?

"A. Probably.

"Q. Can you approximate the distance you were away from the truck when it entered the pavement, when it went upon the pavement?

"A. No.

"Q. Could you say you were as much as a hundred feet away when it entered the pavement?

"A. I don't know, I am no judge of distance."

Grady Martin, the driver of defendant's truck, questioned as to what he saw, says:

"Q. Did you see the Hudson coming?

"A. Yes, sir.

"Q. When you first saw the Hudson where were you and how far away was the Hudson?

"A. Well, I saw it just before I came out of the yard. It was a block away.

"Q. Could you tell how fast it was coming?

"A. Yes, sir.

"Q. Did you drive on the street?

"A. Yes, sir.

"Q. How much of the turn had. you made when the collision happened?

"A. Well, I was about a 50 degree angle or 60 or something like that. I wasn't exactly straight.

"Q. You were turning north?

"A. Yes, sir.

"Q. How fast were you going?

"A. Well, I couldn't say. I couldn't have been making more than five miles an hour."

He further testified that he could not tell whether Miss Willis was looking ahead or not; that he sounded his horn; and that she was about 75 feet from him when she turned to the left, and he judged that she was driving at the time about 30 miles an hour.

In another place he testified:

"Q. Did you stop before you came on the highway?

"A. Yes, sir.

"Q. Where did you stop?

"A. Right in the gate.

"Q. Was that when you saw Miss Willis coming?

"A. Yes, sir.

"Q. Why didn't you wait until she passed?

"A. Well, I had plenty of time to get on the street if she hadn't been running as fast as she was.

"Q. You didn't do it, did you?

"A. It didn't seem like I did.

"Q. If you had waited just a little bit she would have passed you, wouldn't she?

"A. I suppose so."

In another place:

"Q. Why didn't you have time to, make the turn after you drove on the street?

"A. Well, for the simple reason she was speeding and running faster than I judged she was.

"Q. Had you sufficiently made the turn to permit her to go on driving to the right?

"A. Yes, sir."

In another part of his testimony he estimated that Miss Willis was coming, when he first saw her, at 25 and 30 miles. But we cannot accept his estimate of her oncoming speed, as a safe guide, because it was raining at the time and the windshield of his truck was not equipped with a wiper, consequently his visibility was likely to be not good, and furthermore it is almost impossible for a party driving an automobile to accurately judge the speed

of an oncoming car without close and very careful observation for a period of time longer than a hurried look. In this instance the damage sustained by plaintiff's car which was being driven, and that sustained by the truck which was almost stationary at the moment of the impact, shows that plaintiff's car was moving at a velocity which we can hardly estimate at less than 20 miles an hour. The speed of plaintiff's car at the time the truck came out into the street ahead of it is left uncertain by the evidence. It is a matter for speculation.

The ordinance of the town fixed the speed limit on Third street at not exceeding 20 miles an hour. With the uncertainty of the evidence on the subject, we conclude that the presumption must be in favor of the plaintiff, that the driver of his car was not violating the town law, and that his car was not being driven faster than 20 miles an hour at the time in question. As plaintiff's car was not shown to have been driven faster than the town ordinance permitted, the driver of plaintiff's car cannot be said to have been negligent in the matter of speed.

Defendant pleads that plaintiff had the last clear chance to avoid the accident.

This brings up the question: At what distance the driver of plaintiff's car saw or should or could have seen the truck and have stopped, if necessary, to avoid striking it.

On this subject the evidence has left the matter uncertain. The diagram in the record shows Third street, Cavanaugh avenue, the private driveway out of which defendant's truck was driven and some other places, but the witnesses did not bring out and establish with reasonable certainty the place on the street, that is the distance plaintiff's car was from the truck at the time the truck first appeared on the street. There are some general statements and estimates on the subject from which we estimate in a very general way that plaintiff's car was likely about 75 feet distant when defendant's truck came out of the driveway into the street ahead of it. But the evidence does not enable us to form a satisfactory conclusion as to the distance in question. We conclude that the driver of plaintiff's car was not negligent for not trying to stop sooner than she did. The brakes on plaintiff's car were not defective.

As the truck came out of the private driveway on to the street, he was required by the law of the town, as well as that of the state, to stop at the edge of the west side of the street and wait there so that the traffic going south on the street might continue to pass on the right side, and should not have entered into the street and drawn itself across, practically blocking the street, making a left-hand turn, until he had first seen that there was no oncoming traffic either north or south, making the movement dangerous. The driver of defendant's truck was shown to have been at fault in this respect.

Act No. 296 of 1928, sec. 21, provides that—

"The driver of a vehicle entering a public highway from a private road or drive shall yield the right-of-way to all vehicles approaching on such public highway."

The ordinance of the town of Leesville contains a similar provision as to all vehicles entering Third street.

Defendant's driver admits that he saw the Hudson, which was plaintiff's car,

about a block distant coming toward him at the time he entered the street and he should have waited where he was at the time until it had passed before entering on the street. Having seen the car, he was charged with the duty of stopping and waiting for it to pass, and he admits that he did not do it, but depended on getting across the street and to the right-hand side going north before the car could reach him. But his turn was so slow that it brought about the collision.

If the evidence had shown that the driver of plaintiff's car had seen the truck come out and start across the street in time to have stopped and avoided a collision, it would have been negligence not to do it; but the evidence does not show that such was the case. In fact, the driver of plaintiff's car was not called on to act until defendant's failure to obey the law and the resulting danger reasonably appeared, because the driver of plaintiff's car had the right to suppose that the driver of defendant's truck would obey the law. In the meantime and before the driver of plaintiff's car could judge of what defendant's driver was going to do, plaintiff's car going forward at 20 miles an hour would cover a distance and go so close to the truck that a stop could not be accomplished. In an emergency thus created by defendant's driver, plaintiff's driver had the right to swerve from the right of the street to the left if there appeared reasonable prospect of avoiding a collision by so doing. The fact that the turn to the left failed to avert a collision did not relieve defendant's driver from having been responsible for the collision, the sudden emergency having been produced by his fault.

The testimony of defendant's driver shows that he saw plaintiff's car approaching before he left the driveway. He thought he could get across the street and turn to the left before plaintiff could reach the place, but plaintiff's car was too close. He should not have taken the chance when visibility was impaired by the rain.

It is likely that the lower court knew the witnesses, and not only that, he likely knew locations and distances important in the determination of the case better than we are informed from the record concerning same. He decided in favor of the plaintiff, and we do not feel justified in holding that he was in error in doing so.

Defendant contends that the amount should be reduced. Plaintiff's car cost $1,585 new; it had been used about three years and had been driven about 38,000 miles. The plaintiff did not have his car repaired, but traded it, in the condition it was in, for a new car valued at $1,485, receiving in the trade a credit of $300 as the value of his old car.

Judgment for $578.75 and a credit for $300 makes plaintiff recover for his old car the sum of $878.75, which is more than half what it cost him when new and practically half the price of the new one.

We find that plaintiff is entitled to recover as damages the expense it will be to repair his old car so as to make it as good as it was at the time of the collision, or as near as can be done. A mechanic testifies that it will cost $578.75 to do that, and the lower court rendered judgment in favor of the plaintiff for that amount.

We think that the holding was correct. Judgment affirmed; defendant, appellant, to pay the cost in both courts.