**GAUBERT v. ED. E. HEBERT CO., Inc.**

No. 1714.

Court of Appeal of Louisiana. First Circuit.

June 9, 1937.

Harvey Peltier and Hubert A. Lafargue, both of Thibodaux, for appellant.

Howell & Deramee, of Thibodaux, for appellee.

LE BLANC, Judge.

Plaintiff, Maurice Gaubert, sustained a very severe injury to his left arm as a result of an automobile accident in which his Ford automobile which he was driving, and

a truck belonging to the defendant, Ed. E. Hebert Company, Incorporated, and being driven by its employee, Walter Mire, were involved. The accident occurred at about 5 o'clock in the afternoon of July 16, 1935, on the paved highway which connects the towns of Thibodaux and Houma, at a point approximately three-quarters of a mile south of Thibodaux.

■ Claiming that the accident was caused solely and entirely through the negligence and carelessness of the driver of defendant's truck in suddenly entering and crossing the highway diagonally from in front of a gasoline filling station on the west, and without giving any signal or warning of his intention to do so, all in violation and disregard of the safety of oncoming traffic, plaintiff instituted this suit against the defendant, the truck driver's employer, to recover damages in the sum of $22,843.90 under the doctrine of respondeat superior. He made the necessary allegation that the truck driver was, at the time of the accident, engaged in the service of his master, and that is not a controverted issue in the case.

The damages claimed are for shock, pain, and suffering in the sum of $17,500; loss of work, $1,800, and for various items including doctors' and hospital bills, drugstore bills, and expenses incurred in traveling to and from New Orleans for treatment, the sum of $3,543.90.

In reciting the facts concerning the actual collision, plaintiff alleges that he was driving north towards Thibodaux in the same direction in which the truck was headed for; that the driver started the same diagonally across the highway, and carelessly and negligently ran into the left front of his car and thus caused the damage which he sustained. Defendant in its answer denies all allegations in which negligence is charged against the driver of its truck, but it particularly denies that the truck ran into plaintiff's car. It is alleged, on the contrary, that the truck had proceeded on the highway for a distance of 300 feet, traveling on its right side of the road, when the plaintiff negligently and carelessly ran into it. It is alleged that at the time the truck entered upon the highway from the gasoline filling station plaintiff's car was at a distance of approximately 1,000 feet south, and that as the highway is straight for that distance, with no obstructions, plaintiff had every opportunity of seeing the movements of the truck and of having his car under control to pass to the left where he had ample room to do so, when he sought to overtake the truck. Instead, defendant alleges, plaintiff recklessly tried to pass to the right of the truck when there was no space there for him to do so. It is further alleged in the answer that plaintiff was driving at a speed of 60 miles per hour, that he was not keeping a proper lookout, and that he lost control of his car, all of which constituted gross carelessness and negligence and in effect was the proximate cause of the accident.

■ The district judge handed down written reasons for judgment in which he reached the conclusion that the negligence of the truck driver in failing to apprehend the exact situation then existing, and especially in not looking a second time after he had seen plaintiff's car at an appreciable distance, before starting his truck across the highway after having turned it around, was the primary cause of the accident. He was of the opinion that plaintiff had taken proper precaution by blowing the horn of his car at a sufficient distance from the truck to give the truck driver warning of his presence on the highway and of his intention to go on ahead, and, with regard to his action in attempting to pass to the right of the truck instead of on the left, he found that, because of the emergency which presented itself, plaintiff was justified in making that choice of either of the alternatives under the emergency rule or doctrine, under which it suffices that the course followed by the automobile driver is the one which would suggest itself to a reasonably prudent and careful person as the safest, when confronted with the same danger. He awarded damages in the sum of $7,357.70, and from that judgment defendant has appealed. Plaintiff has answered the appeal, asking for an increase of $5,000 in the amount of the award.

■ The weather was clear on the day of the accident, and at 5 o'clock of the afternoon in the month of July we know that it is still more than two hours before dusk.

The defendant company is engaged in the wholesale grocery business, and its truck was at the time delivering groceries at the store of Clement Durocher. A gasoline filling station is operated in connection with the store. As already stated, the store and station are situated approximately three-quarters of a mile south of Thibodaux, on

the west side of the highway, and about 15 feet from the paved portion of the highway.

The truck had been driven inside a roadway or passageway on the south side of the store, the front end facing west or away from the highway, and the groceries were unloaded from a side door of the truck which was then next to the store. After the delivery had been made, as the driver intended to go back to Thibodaux, it was necessary for him to back his truck onto the gravelled surface in front of the gasoline filling station and head it north. This, the truck driver, Walter Mire, says, is exactly what he did. He explains further, however, that as the tarpaulin covering on the back of the truck obstructed his rear view when backing the truck to turn it in this manner, while seated in the driver's seat, he stood on the running board and handled the steering wheel from that position, while doing so, in order to get a better view in the back and to the side.

The way in which we understand his testimony, it was after he had backed the truck and turned it around that Mire says he saw plaintiff's car approximately 300 yards south of Durocher's store. In this we think he is mistaken and that what he meant was that it was while he was in the act of backing that he saw the car that distance away. It seems to be conceded on plaintiff's side that he was traveling at a speed of not less than 45 miles an hour, and consequently he was advancing 66 feet per second. Assuming that it took five seconds, which seems reasonable, for Mire to back and turn the truck, plaintiff's car would have traveled 330 feet during that interval, and that would then have placed it over 1,200 feet from the filling station while the truck was being turned. There is nothing in the record to suggest such distance. We say, therefore, that probably Mire meant that it was as he looked back, while in the act of backing the truck, that plaintiff was about 300 yards or 900 feet south of him, and that he felt perfectly safe in making the turn. Plaintiff earnestly disputes this to be the fact, however, as necessarily he must, for, if he was that far from the truck at the moment, it would have to be conceded that the truck driver was not in fault in executing his turn and proceeding on the highway.

Plaintiff testifies that when he first saw the truck it was on the shoulder, at an angle, facing the direction of Thibodaux, and about to go upon the paved portion of the highway. At that moment, he insists that he was only 100 feet south of it; that he blew his horn and continued without reducing the speed of his car, as he thought the truck driver would stop and let him pass. Although the road was straight for a distance of 1,000 feet, south of Durocher's store, he did not see the truck before them. He says he did not see the truck when he was even within 250 feet of the store, and gives as his reason that it was at that time off the paved portion of the highway and that he was looking straight ahead. The truck is shown to have been 7 feet wide and, as the shelled surface in front of the store extended only 15 feet to the pavement, it follows that the truck occupied nearly half of those 15 feet, and to say that the driver of a car, coming down the highway, looking straight ahead, would not have seen the movements of the truck backing and making a turn in that open space adjoining the pavement, for a distance of 250 or 500 feet, for that matter, does not seem reasonable. That, to us, presents the first weak point in the plaintiff's case.

After the truck had entered the paved portion of the highway, Mire says that he pulled over to the right and had traveled about 200 feet when he heard the horn of plaintiff's car. He says that he went 50 feet more after hearing the horn, after which plaintiff ran into him, jamming his car between the truck and the guard rail to his right. Thus, according to the truck driver, the impact took place about 250 feet north from the point where he had entered the paved portion of the highway and where plaintiff admits he had seen him from a point 100 feet still further south. Plaintiff fixed the point of collision about 125 feet from Durocher's store, but the preponderance of testimony on this point shows that he is in error and that it was at least 200 feet north of the store. Eddie Knobloch, state highway police patrolman, called as a witness on behalf of plaintiff and Charles Stevens, also plaintiff's witness, both say that it might have been more than 200 feet, and Mrs. Clement Durocher, a witness for the defendant, who saw the accident, states that the impact took place at either the ninth or tenth guard rail post. It is shown that the guard rail commenced at a point 35 or 40 feet north of the Durocher store and that there was a distance of 20 feet between each rail post. Consequently, if the collision was at the ninth post, it was at a point 160 feet plus 35

or 40 feet, or practically 200 feet north of the store. Even were we to adopt plaintiff's own estimate that he did not see the truck until he was 100 feet from it at the time it was entering the paved portion of the highway, we find that he traveled more than 200 feet back of it while it was on the pavement and, regardless whether it occupied the center of the highway or was on its right-hand side, it would seem that, going at 45 miles, as he admits he was, plaintiff had sufficient distance in front of him in which to bring his car under control and avoid an accident. This, in our opinion, constitutes the second point of weakness in his case.

But the physical facts, as determined from the relative speed of the two vehicles, demonstrate almost without doubt that plaintiff's car was at a distance far more than 100 feet, as he contends, from Durocher's store at the moment when the truck was entering the paved surface of the highway. The truck driver testifies, and it is not disputed, that the truck was traveling between 10 and 12 miles an hour. Plaintiff's car, as we have seen, and he admits, was making 45 miles. The proportion between them, therefore, was about four to one. In other words, for every foot of distance covered by the truck, the plaintiff's car was covering 4. Therefore, for the 200 feet distance traveled by the truck after it had entered the paved portion of the highway, plaintiff's car traveled a distance of 800 feet. As plaintiff himself testifies that at no time did he reduce his rate of speed, the conclusion seems to us to be inescapable that at the time the truck entered upon the pavement he was approximately 600 feet south of it. Why in all that distance and the 200 feet more that he followed it on the pavement plaintiff did not bring his car under control in order to avoid running into that truck, even though the truck driver had been guilty of gross negligence, has not been satisfactorily explained.

■ It is urged on his behalf, and as a matter of fact which appears from his own testimony, his excuse is that he had the right of way and it was the truck driver's duty under the law to respect this right, especially so after he had given warning of his approach by blowing his horn. The provisions of the highway regulatory statute are invoked in his behalf, particularly paragraph (e) of rule 11, section 3 of Act No. 21 of 1932, which prescribes the duty of the driver of a vehicle entering a public highway from a private road or drive and makes it mandatory that he yield the right of way to all vehicles approaching on such public highway. To what extent or how long the driver entering the highway has to wait until an approaching vehicle passes is a question which naturally depends on the facts and circumstances presenting themselves in each case. It is questionable whether he would have to wait, say, for a car 600 feet away from him to pass before going upon the highway. It seems unreasonable that he should unless he knows that that car is coming at an unbelievable rate of speed. But let us assume, for the sake of the argument, that he should, and that his not doing so would amount to negligence, the mere fact that the approaching car enjoys the right of way does not give the driver of that car a license to throw all caution to the wind and drive headlong on the highway irrespective of the results. The right of way granted, under the rule of the statute which is here invoked, to the driver of the approaching car, is qualified to the extent that, if he discovers in time that the car entering the highway from the private driveway is not yielding the advantage to him, it then becomes his duty to place his car under such control as to be able to meet the situation of peril which may thereby be created. In this case, under the facts as we find them, plaintiff had ample time in which to observe the situation and so bring his car under control, but he took no steps whatever to do so and continued running at the same rate of speed, relying entirely on the warning given by the blowing of his horn. This, clearly, was not sufficient, as is shown by the results which followed. We find it impossible to hold the plaintiff free of negligence, and on this point we have to disagree with the learned district judge.

■ Neither can we agree with him that under the facts presented the case is one in which the emergency rule is to be applied. Assuming again, for the sake of argument, that the truck driver was negligent in partly occupying the center of the paved part of the highway and that there were two or three courses open to the plaintiff for him to safely meet the situation, we do not think there was such a sudden emergency created as warranted the application of the rule stated. Under plaintiff's own testimony and under the

finding of the district judge, he was from 100 to 140 feet from the truck as it entered the paved portion of the highway, and from that point he traveled 200 feet more before the collision took place. Surely, in that distance, with the opportunity of observing the continued movement of the truck ahead of him, he had time to apprehend the impending danger and exercise sufficient judgment to meet it in the safest way. Under our finding that he was very much further away from the truck at the time it first entered the pavement, the rule has still less application. We find nothing in the record which suggests a reason why plaintiff should have driven his car to the right-hand side of the road save his own assumption, as he states, that he had the right of way and that the truck driver would respect that right by staying on his left-hand side until he had safely passed by. We do not think that his act, under the circumstances, was that of a reasonably careful and prudent driver of an automobile.

We have been referred to several decisions of our appellate courts by counsel for the plaintiff, as authorities upholding the judgment of the lower court, notably, the cases of Lofton v. Cottingham, 172 So. 377, Goff v. Sinclair Refining Co., 162 So. 452, 453, and Willis v. Standard Oil Co.; 17 La.App. 217, 135 So. 777. We have examined these and all others cited and find in each a factual situation different from the one presented in this case. On the other hand, in the case of Gray v. Southern Auto Wreckers, Inc. (La.App.) 166 So. 154, with the only difference that the truck was entering the highway from an intersecting point instead of from a private driveway, we have a state of facts very similar to those presently before us, and there, the driver of the car which ran into the truck was held guilty of contributory negligence. Giles et ux. v. Post, 17 La.App. 225, 135 So. 775, also presents facts almost the same as we have here, and in that case also the driver of the car which ran into the truck entering the highway from a private roadway was held negligent.

The appellate court is always reluctant to reverse a judgment of the lower court on questions of fact, but, after all, its very function is to review the case in its entirety and, when it becomes convinced of error, the law points out its duty which is to correct that error. In this case, our careful examination of the record has led us to different conclusions than those reached by the learned judge a quo, and we have no alternative but to reverse the judgment which he rendered in favor of the plaintiff.

For the reasons stated, it is therefore ordered, adjudged, and decreed. that the judgment appealed from be, and the same is hereby, reversed, annulled, and set aside, and it is now further ordered that there be judgment in favor of the defendant and against the plaintiff rejecting the latter's demand and dismissing his suit at his costs.