This case arises out of an accident occurring on Pontchartrain Boulevard, between Carrollton Avenue and Metairie Road, at about 10:15 a.m. on July 25, 1940, wherein a truck owned by Gonzales Motor Company and insured by the defendant, Bankers Indemnity Insurance Company, collided with the automobile of the plaintiff, Fred P. Hagaman. The truck of the Gonzales Motor Company was being driven at the time by its employee, Harold Rollins. The automobile of the plaintiff was driven by his wife, Mrs. Fred P. Hagaman, a coplaintiff herein. Fred P. Hagaman sues for property damage in the amount of $411.50 and Mrs. Hagaman seeks recovery for personal injuries in the amount of $1,250, as a consequence of the accident.
There is no real dispute as to the material facts involved.
Pontchartrain Boulevard is an avenue running from Carrollton Avenue to Lake Pontchartrain along the upper or eastern bank of the New Basin Canal. That section of the boulevard between Carrollton Avenue and Metairie Road consists of two roadways divided by a neutral ground, the lower roadway, that adjacent to the canal, being reserved for traffic proceeding toward the lake and the upper roadway being reserved for traffic proceeding in the opposite direction. The neutral ground is raised above the street surface, bordered by a concrete curb and ornamented with shrubbery and small trees. In this neutral ground are thirty foot-wide openings, at intervals of about 300 feet, or one square apart, so as to permit traffic to cross from one roadway to the other. The boulevard and canal, at a point approximately three blocks from Carrollton Avenue toward the direction of Lake Pontchartrain, are crossed by the overpass of the new Airline Highway.
On the morning of the accident, that portion of the lower or canal side roadway of the boulevard, under and in the immediate vicinity of the overpass, was being resurfaced. As a consequence of this construction, the lower or canal side roadway, at a point some 180 feet from the Carrollton Avenue side of the overpass, was barricaded to detour outbound or lake-bound traffic over to the other, or upper roadway. Barricades had also been placed in the first gap or opening in the neutral ground on the lake side of the overpass, thus preventing motorists from regaining their proper side of the road until they reached the second gap or opening — a distance of about 400 feet beyond the lake side of the overpass. These barricades, about 4 feet in height, were in the form of wooden carpenter's horses. It is shown, also, that there were no signs of any kind at any point on the lake side of the overpass so placed that they might serve to warn traffic approaching from the direction of the lake that the lower roadway traffic was being detoured to the upper roadway. *Page 392 
Mrs. Hagaman entered Pontchartrain Boulevard at Carrollton Avenue, traveling towards the lake, and from this point proceeded out on the lower or canal side roadway. Upon reaching the gap or opening in the neutral ground nearest the Carrollton Avenue side of the overpass, the barricades across the canal roadway forced her to detour to the roadway reserved for incoming traffic. Accordingly, she turned to her left, through the neutral ground opening, and proceeded along the upper roadway to the point where the accident occurred, this being shown to be approximately two squares from the point where she had entered the upper roadway. She was traveling at the moderate rate of about 20 to 25 miles per hour, and, while proceeding along the upper roadway, she held to her right, or to the neutral ground side of that roadway, as by law she was required to do. She could not, in fact, have done otherwise, because the remainder of the roadway — to her left — was being used by incoming traffic, or that approaching from the direction of the lake.
At the time Mrs. Hagaman detoured from the lower to the upper roadway, the truck of the Gonzales Motor Company was approaching along said upper roadway from the opposite direction. This truck was also holding to the neutral ground side of said upper roadway, proceeding at a speed of from 30 to 35 miles per hour. From this resulted the head-on collision.
The specific acts of negligence charged to the truck's operator and alleged to be the sole causes of the collision are that he failed to keep to the right, failed to observe the approach of plaintiff's automobile, and, if he did observe it, he failed to return to his right side of the traffic lane, a course which would have prevented the collision.
Defendant denied all allegations of negligence directed against the operator of the truck and affirmatively pleaded the negligence of Mrs. Hagaman as the sole and only cause of the accident. In the alternative, the contributory negligence of Mrs. Hagaman is urged in bar of recovery.
After a trial of the case on its merits, there was judgment in favor of Fred P. Hagaman in the sum of $249.50, subject to a credit of $25, and in favor of Mrs. Hagaman in the sum of $250. Defendant has appealed.
From the facts and circumstances disclosed by the record, the palpable gross negligence of the truck driver cannot be seriously disputed. It is shown that he was driving his truck at a speed of 30 to 35 miles per hour, holding to his left, or the neutral ground side of the roadway, in the face of approaching traffic, without once discovering the impending danger he was creating until it was much too late to avoid the crash. The truck driver testified that he did not see the approaching Hagaman car, being entirely oblivious of the grave realities of the situation until he had reached a distance of about 50 feet away, a distance much too short within which to avert the collision. Under such circumstances he failed to exercise that degree of vigilance and alertness required of operators of motor vehicles. His indifference and apparent lack of attention was most unreasonable considering the time, the place and use then being made of the roadway. By the exercise of ordinary care and observation, the truck driver could immediately have realized that the upper roadway was being used by vehicles proceeding in opposite directions, sanctioned by the necessities of the moment, and could have easily and seasonably regained the lane of traffic proceeding in the direction in which he was moving, thus leaving the other half of the roadway in use at the time for the passage of the oncoming Hagaman car. In this manner the collision could have been avoided.
It is not negligence per se for one to drive in the center, or on the wrong side of the road, but it is negligence for one who is on the wrong side of the road to fail to pull over to the right on meeting another vehicle. Elliott on "Roads Streets", 3d Ed., Sections 1079-1082.
Counsel for defendant, in their brief and argument, very frankly concede the negligence of the truck driver. They contend, however, that Mrs. Hagaman was guilty of negligence contributory to the accident of such a character as to bar her recovery and that of her husband. The trial court answered that contention in the negative, and we think this disposition of the matter manifestly correct.
The record discloses that Mrs. Hagaman was driving at the moderate rate of 20 to 25 miles per hour; that on entering the upper roadway, because of the barricade on the lower side, she proceeded along her right, or the neutral ground side, the place where traffic regulations required her to be; that traffic was approaching and passing her to her left, coming from the *Page 393 
direction opposite to that in which she was moving, thereby forcing her to drive to her right and as close to the neutral ground side as possible. It is further shown that she observed the truck of the Gonzales Motor Company being driven towards her in her lane of the traveled roadway, instead of in the lane being used by other approaching vehicles. The space in which this observation was made is not shown, though it appears to have been about a distance of three squares. She testified that she proceeded along her right side of the roadway, at all times expecting that the driver of the approaching truck would regain the lane or traveled portion of the roadway where he was required to be, thereby yielding to her one-half of the roadway. Acting on this assumption, she stated that the danger which confronted her brought about a feeling of helplessness. She explains this helplessness by stating that she was unable to turn to her right because of the raised neutral ground concrete curb, and could not turn to her left because of the vehicles approaching and passing in the opposite direction.
It is well-recognized that a motorist has the right to assume that the driver of a vehicle coming from the opposite direction will obey the law and to act upon such assumption in determining his own manner of using the road. As stated in 2 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 919: "A driver, therefore, proceeding on the right side of the traveled way, may assume that the driver of a vehicle approaching on the same side, or on his left hand side, will do all that a reasonably prudent person, under all circumstances, would do to avoid a collision, which ordinarily would be to yield half the way or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving."
Learned counsel for defendant contend, however, that Mrs. Hagaman should have, in the face of the approaching truck bearing down upon her, either stopped or sounded her horn. We are not certain, however, that either or both of such acts would have awakened the oblivious truck driver and thus have afforded him an opportunity to extricate himself from the dangerous position of his own creation.
Suffice it to say that, acting under the assumption which the law affords and recognizes, when she was confronted with this sudden peril she was not called upon to exercise the same degree of care required had she had time for reflection. When brought face to face with unexpected danger brought about by the gross fault of another, one cannot be held contributorily negligent upon the failure to use the best judgment. Willis v. Standard Oil Company, 17 La.App. 217, 135 So. 777; Lacy v. Lucky et al., 19 La.App. 743, 140 So. 857; Jacob v. Edwards et al., La.App., 171 So. 165.
The reasonableness of the amounts awarded the plaintiffs is not questioned and we conclude that the damages allowed are in accordance with the proof submitted.
For the reasons assigned, the judgment appealed from is affirmed, with costs.
Affirmed.