149 So.2d 753 (1963)
Gary Wayne STANFORD
v.
BATEMAN FROZEN FOODS COMPANY, Ulysees Wise and the Fidelity and Casualty Company of New York.
Burnell DEDEAUX
v.
BATEMAN FROZEN FOODS COMPANY, Ulysees Wise and the Fidelity and Casualty Company of New York.
No. 5709.
Court of Appeal of Louisiana, First Circuit.
January 18, 1963.
Rehearing Denied February 22, 1963.
Certiorari Refused April 17, 1963.
*754 Christovich & Kearney, by A. R. Christovich, Jr., New Orleans, for appellant.
Edward B. Dufreche, Ponchatoula, Seale, Hayes, Smith & Baine by R. W. Smith, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET and LANDRY, JJ.
LANDRY, Judge.
These two actions arising from an intersectional collision between a hot asphalt laden dump truck owned by plaintiff, Burnell Dedeaux, and being operated by his employee, Gary Wayne Stanford, and a tractor-trailer having an overall length of 50 feet, owned by defendant, Bateman Frozen Foods Company, and being driven by its employee, Ulysees Wise, were consolidated for purposes of trial.
For oral reasons assigned and incorporated in the record, our learned brother below rendered judgment in favor of plaintiff, Gary Wayne Stanford, and against defendants, Ulysees Wise, Bateman Frozen Foods Company and The Fidelity and Casualty Company of New York, liability insurer of Bateman Frozen Foods Company, in solido, in the aggregate of $19,118.27, in recompense for personal injuries sustained in the accident and anticipated loss of future wages. The trial court also recognized the claim of intervenor, National Surety Company, compensation insurer of T. L. James and Company, Contractor, (from whom Stanford's employer, Dedeaux, had a subcontract), in the sum of $3,478.27, representing medical expense incurred in treatment of Stanford's injuries and workmen's compensation benefits paid Stanford, and accordingly, rendered judgment in said amount against Stanford in favor of said intervenor. In addition, judgment was rendered below in favor of plaintiff, Burnell Dedeaux, in the sum of $1400.00, said amount being stipulated as the extent of damages to the dump truck involved in the collision. From the aforesaid adverse judgments, defendants have appealed.
The accident in question occurred November 20, 1959, within the City limits of the Town of Ponchatoula, in the vicinity of the intersection of Fifth Street (locally known as Range Road) and Elm Street. The junction formed by the two aforesaid roadways is what is commonly referred to as a "T" intersection in that Elm Street joins Range Road from the West and does not continue to the East of Range Road. Both Elm Street and Range Road are two-lane thoroughfares. Immediately prior to the accident, plaintiff, Stanford, was proceeding southerly along Range Road (admittedly the superior thoroughfare) while defendant Wise was traveling easterly along Elm Street, nearing the intersection of said roadways. Defendant Wise, upon reaching the intersection, turned to his right to proceed southerly along Range Road and the rear end of the trailer of his tractor-trailer assembly was struck by the front end of the dump truck being driven by plaintiff Stanford.
Plaintiffs maintain the accident resulted solely from the fault of Wise in not *755 maintaining a proper lookout; failing to stop at the intersection; failing to accord plaintiff Stanford the right of way to which he was entitled and driving onto the superior roadway in the path of plaintiff's oncoming vehicle at a time when plaintiff's truck was so near as to make such maneuver patently dangerous.
Defendants contend that Wise preempted the intersection at a time when plaintiff's vehicle was approximately one block distant and that the accident resulted solely from the negligence of plaintiff Stanford in failing to maintain a proper lookout; traveling at an excessive rate of speed; failing to keep his vehicle under proper control; failing to see the tractor-trailer in time to avoid a collision; failing to accord defendant the right of way acquired by legitimate preemption and failing to take evasive measures to prevent a collision. Alternatively, defendants plead the contributory negligence of plaintiff Stanford in the aforesaid respects.
On appeal defendants contend the learned trial court erred in (1) finding any negligence whatsoever on the part of defendant Wise; (2) not finding plaintiff Stanford guilty of negligence constituting the sole proximate cause of the collision; (3) failing to find plaintiff Stanford guilty of contributory negligence; and (4) awarding plaintiff Stanford excessive damages.
The record reveals that the left front of Stanford's dump truck struck the right rear corner of defendants' trailer at a point approximately fifty feet south of Elm Street, the impact occurring some two or three feet past the centerline of Range Road in the eastern or northbound lane of travel of Range Road.
Plaintiff Stanford testified that he was traveling at a speed of approximately 22-25 miles per hour (within the legal limit of 25 miles per hour in force within the City of Ponchatoula). When he reached a point estimated to be approximately 200 feet from the intersection of Elm Street, Stanford noted defendant's truck-trailer unit approaching Range Road from his right but thought that Wise would stop and accord him the right of way to which he, Stanford, was entitled. According to Stanford, Wise did not stop at the intersection but continued to proceed at "a nice rate of speed" and proceed to make a right turn. The length of Wise's tractor-trailer unit was such that Wise was required to swing out across the eastern or northbound lane of Range Road in order to make the intended turn. In making such maneuver the lengthy vehicle completely blocked both lanes of Range Road. As Stanford observed defendant's ponderous vehicle pulling out onto the highway, Stanford blew his horn, applied his brakes and attempted to pull to his left thinking that he might avoid a collision. It was apparent, however, that Stanford could not pass to the left of the tractortrailer and he then immediately pulled to the opposite side of the street thinking that perhaps he might pass Wise on the right without contact between the two vehicles. Stanford's evasive measures were without avail as the collision between the two vehicles took place as hereinbefore indicated.
In some measure Stanford's version of the accident was corroborated by a coworker, M. C. Miller, who was following along behind Stanford driving a truck similarly loaded. Miller was not certain as to the exact distance Stanford was from Elm Street when Wise began his turn. Miller, however, substantiated Stanford's testimony to the effect that Stanford was traveling at a speed of approximately 25 miles per hour. In addition, Miller stated that he observed Wise pull out directly into the path of Stanford's oncoming vehicle and further observed Stanford pull first to the left and then to the right in an effort to avert an accident. Following the accident Miller noted that both lanes of travel on Range Road were completely blocked by defendant's lengthy vehicle.
Mike Tinnerella, the first person to arrive upon the scene following the accident, testified that the truck driven by plaintiff Stanford *756 was dragged a short distance following the impact. He further noted that when the vehicles came to rest the highway was completely blocked so that traffic could not pass in either direction.
Officer Peltier, Assistant Chief of Police, Ponchatoula, stated he arrived upon the scene approximately 30 minutes following the occurrence of the accident. He noted that the tractor of defendant's vehicle was in its right or proper lane of travel but that the rear end of the trailer was still some 2½ to 3 feet in the left or northbound lane of Range Road.
Mr. Charles M. Wagner testified he did not see the accident but arrived at the intersection shortly after the occurrence of the mishap. He fixed the point of impact by a break in the concrete surface of the roadway which break was caused by the impact. As Wagner expressed it:
"There was a section of the road that was caved in or crackedwhen the truck hit the trailer caused the cement or the foundation of the road to give way and made a relatively good size break in the concrete."
At the moment of impact Wagner estimated that the left rear of the trailer extended 2½ to 3 feet into the east or northbound lane of travel of Range Road.
Wagner's testimony concerning the point of impact was confirmed by that of one Joe McAlister who stated in substance that he established the location of the collision by dirt which had fallen from the vehicles.
Defendant Wise stated that upon approaching the intersection of Range Road with his tractor-trailer unit he came to a complete stop before entering the superior thoroughfare. He further stated that he observed Stanford's approaching truck approximately one block to his left and felt that he had ample time to negotiate the intersection without incident.
Our learned brother below concluded the proximate cause of the accident was the negligence of Wise in attempting to proceed onto a favored street from a secondary road at a time when the approaching truck was so near that it was dangerous for him to do so. He further opined that Wise apparently misjudged the distance of the oncoming dump truck. With these conclusions we are thoroughly in accord.
We are convinced from the record that plaintiff Stanford was free of negligence constituting a proximate cause of this accident. He was proceeding at a lawful rate of speed. As he approached the intersection of Elm Street he had every reason to expect that defendant's vehicle would accord him the right of way to which he was entitled. Willis v. Standard Oil Company of Louisiana, 17 La.App. 217, 135 So. 777; Chandler v. Grain Dealers Mut. Ins. Co., La.App., 131 So.2d 606. Upon noting defendant's vehicle proceed into the intersection he immediately sounded his horn and began to take reasonable precaution to avoid an accident. Stanford first attempted to go to the left of the tractor-trailer but upon observing that defendant's vehicle had swung out in such a large arc that the left or northbound lane of travel was blocked, he then elected to try to pass on the right in a last desperate attempt to avoid contact with the trailer. That his maneuverings were unsuccessful is beside the point. A motorist faced with a sudden emergency not of his own creation is not held to the same degree of care as is required of a motorist under normal circumstances. Faced with a sudden emergency not of his own making, a motorist is required only to react as an ordinary reasonably prudent individual and is not charged with negligence because he fails to elect the best possible means available to avoid an accident. If he takes reasonably prudent evasive measures under the attending circumstances he has discharged the burden of care incumbent upon him. Stanford's testimony reveals that when defendant's cumbersome vehicle proceeded into the intersection he, Stanford, was so near that he could not stop his truck heavily laden as *757 it was. Being unable to stop in time he resorted to the only other evasive measures left to him, namely he vainly attempted to pass to one side of defendant's vehicle.
Assuming that defendant Wise stopped at the intersection (as he testified) before entering Range Road, he nevertheless failed to discharge the remaining burden incumbent upon him, namely, that of ascertaining that the turn could be made in safety before proceeding onto the favored street. His testimony clearly establishes that he saw the oncoming dump truck. As an experienced driver he must be charged with knowledge of the fact that executing such a turn with a vehicle fifty feet in length required that he proceed past the centerline of the street he was entering and that completion of his intended maneuver would entail blocking the highway. Additionally, he must be charged with knowledge that a vehicle of such nature would require considerable time to complete the intended turn. The record reflects beyond question that defendant Wise failed to take into consideration and make allowances for the size and length of his vehicle and in addition misjudged the proximity and speed of the oncoming dump truck. His aforesaid remissions were the sole proximate cause of the accident. McMorris v. Webb, La. App., 67 So.2d 146; Platt v. Scarborough, La.App., 108 So.2d 802.
At the time of his injury plaintiff was approximately 20 years of age. Dr. J. Willard Dowell, Orthopedist, testified that he first saw plaintiff the day of the accident, plaintiff at the time having been taken to Baton Rouge General Hospital, Baton Rouge, Louisiana. Examination revealed that plaintiff received numerous bruises and contusions but that his principal injury consisted of a compound comminuted fracture at the junction of the middle and distal thirds of the left tibia. Surgery was performed upon the wound. A debridement was done and the fracture fixed with an intramedulary nail. Dr. Dowell initially estimated plaintiff's disability at nine months. Plaintiff remained in the hospital from November 20, 1959 to December 3, 1959. During the first several days of plaintiff's hospitalization he was seen at least twice daily and toward the end of said period he was seen approximately once daily. Following plaintiff's release from the hospital he was again seen by Dr. Dowell on December 21, 1959, on which date Dr. Dowell observed considerable redness over the subcutaneous surface of the tibia and further noted that plaintiff experienced some elevation in temperature. Dr. Dowell placed plaintiff on antibiotics and upon plaintiff's return one week later observed that the condition of the skin on plaintiff's leg was improving. On January 8, 1960, Dr. Dowell again saw plaintiff on which date the skin on plaintiff's leg showed further improvements. On January 19, 1960, X-ray examination revealed little evidence of healing. A new cast was applied to the injured leg. On March 1, 1960, Dr. Dowell removed the cast and applied an ace bandage and placed plaintiff on crutches. Plaintiff returned to Dr. Dowell March 29, 1960, complaining of pain, swelling and inability to bear weight on the injured member. Further examination conducted May 9, 1960, disclosed the fracture was still not healed and also the presence of a small ulcer of the skin at the fracture site. On May 23, 1960, plaintiff again visited Dr. Dowell who noted some improvement although the small ulcer was still present. On June 23, 1960, X-ray examination revealed some healing of the fracture. On July 28, 1960, Dr. Dowell observed the continued presence of the ulcer as well as some redness of the affected area. The intramedulary nail was removed by Dr. Dowell on September 1, 1960, which procedure required surgery necessitating plaintiff's hospitalization for approximately six days. On September 15, 1960, plaintiff returned to Dr. Dowell for removal of the stitches required to close the incision made to remove the intramedulary nail. At Dr. Dowell's request, plaintiff returned approximately four weeks lated or on October 11, 1960, at which time plaintiff complained of *758 soreness and swelling. Plaintiff was last seen by Dr. Dowell on March 7, 1961, at which time Dr. Dowell noted the presence of a crust or scab at the site of the fracture.
Plaintiff remained under the care of Dr. Dowell for approximately 17 months. It is clear that the fracture was a severe injury, healed slowly and caused plaintiff considerable pain. Plaintiff was subjected to the discomfort and inconvenience of a cast for several months, following which he was able to get about only with the aid of crutches for an additional several months period. Ten months following his initial injury plaintiff was required to undergo the pain, suffiering and discomfort of additional surgery and hospitalization incident to removal of the intramedulary nail. In addition to the pain and suffering thus experienced, plaintiff testified that as of November 2, 1960, he had not yet been able to resume his employment as truck driver because of the condition of his leg and that he still experienced pain and weakness in his left leg. Plaintiff further testified that he had twice attempted to resume his former employment as truck driver but was unable to perform the duties required of him in such capacity. Dr. Dowell stated that plaintiff has sustained permanent residual disability which Dr. Dowell rated at between five per cent and fifteen per cent.
Our learned brother below awarded plaintiff damages in the sum of $10,000.00 for physical pain and suffering and defendants complain that the award in this regard is excessive. In view of the severity of plaintiff's injury, the extended duration of the healing process, the second surgical procedure to which plaintiff was subjected and the additional fact that plaintiff was totally disabled for a period of approximately 17 months, we consider the aforesaid award to plaintiff for pain, suffering, inconvenience and discomfort neither excessive nor inadequate and affirm the same.
Plaintiff's unrefuted testimony is to the effect that he earned average wages of $60.00 weekly. It is not disputed that intervenor, National Surety Company, paid plaintiff workmen's compensation benefits at the rate of $35.00 weekly for a period of 64 weeks or total compensation in the sum of $2,240.00 and, in addition, paid medical expenses in the sum of $1,238.27 incurred in the treatment of plaintiff's said injuries.
The trial court awarded plaintiff damages in the sum of $2880.00 in compensation for lost wages. The basis of said award is not made clear in the trial judge's reasons for judgment appearing in the record. Plaintiff was totally disabled for a period of at least 64 weeks predicated upon which he is entitled to lost earnings aggregating a minimum of $3840.00. However, in his petition plaintiff prayed for an award of only $3,000.00 in this regard. Moreover, plaintiff has neither appealed nor answered defendants' appeals consequently we are powerless to increase the allotment made by the trial court for lost earnings.
Predicated upon Dr. Dowell's evaluation of plaintiff's permanent disability at between five and fifteen per cent, our esteemed brother below awarded plaintiff the sum of $5,000.00 for loss of future wages and disability. In arriving at the aforesaid sum our illustrious brother below took the mean average of plaintiff's disability as rated by Dr. Dowell, namely, 10%, and using said figure computed plaintiff's wages at $60.00 per week over plaintiff's employment life expectancy of 42 years and taking 10% of the total thus established, determined that plaintiff would sustain a loss of wages slightly in excess of $5,000.00. In applying the method indicated to arrive at the foregoing award of $5,000.00, the esteemed trial court fell into error. Such method of computing damages has been expressly proscribed by the Supreme Court. McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183.
It is to be noted that plaintiff herein did not pray for damages for loss of future wages but did in fact ask for an award of $250,000.00 for "disability". Our careful *759 review of the record herein discloses no evidence in support of plaintiff's claim that he is entitled to damages for disability which will result in a future loss or diminution in earning capacity. Although plaintiff testified he was unable to resume his former employment as of November 2, 1960, Dr. Dowell's testimony is to the effect that notwithstanding plaintiff's permanent partial disability of five to fifteen per cent, as of April 27, 1961, plaintiff was able to resume his former occupation of truck driver. On this date Dr. Dowell found that plaintiff had complete strength in his left leg and further opined that the only possible source of further trouble was whether plaintiff might subsequently develop an infection in the affected bone. In addition, as of the aforesaid date, Dr. Dowell felt that the remaining sore in the area of the fracture was not of a disabling nature.
We recognize the legal principle that recovery may be allowed for future disability notwithstanding the exact prospective loss of earnings resulting therefrom may not be calculable from the evidence of record. See Hidalgo v. Dupuy, La.App., 122 So.2d 639 and Jobe v. Credeur, La.App., 125 So. 2d 487, both of which authorities are cited with approval in Mercante v. Southern Bell Telephone & Telegraph Company, et al., La. App., 148 So.2d 875.
In the instant case, however, we find the record does not justify an award of such nature. We believe that the awards herein made will amply compensate present plaintiff for all damages sustained in the accident in question. In addition we find that although plaintiff has sustained a slight permanent partial disability, the evidence of record does not establish with reasonable certainty that plaintiff's future earning capacity will be adversely affected thereby. It follows that the award of $5,000.00 allowed by the learned trial court for loss of future earnings and disability is not supported by the record. It also follows that the judgment of the trial court in this regard must be amended by reducing the award to plaintiff in said sum of $5,000.00.
In recapitulation we find that plaintiff herein is entitled to judgment against defendants, in solido, in the following amounts:

Medical expense $1,238.27
Lost earnings 2,880.00
Pain and suffering 10,000.00
 __________
 $14,118.27

For the reasons hereinabove set forth the judgment of the trial court is amended by reducing the judgment in favor of plaintiff, Gary Wayne Stanford, and against defendants, Bateman Frozen Foods Company, Ulysees Boyne Wise and The Fidelity and Casualty Company of New York, in solido, from the sum of $19,118.27 to the sum of $14,118.27 and, except as herein amended and revised, the judgment of the trial court is affirmed at appellant's cost.
Amended and affirmed.
REID, J., recused.
HERGET, Judge (dissenting).
These two cases involving the collision of two trucks were consolidated for the purpose of trial.
In the suit for physical injuries of Gary Wayne Stanford v. Bateman Frozen Foods Company, Ulysees Boyne Wise, the driver of the defendant truck, and The Fidelity and Casualty Company of New York, the public liability and property damage insurer thereof, the Trial Judge, for oral reasons assigned but dictated in the record, awarded Gary Wayne Stanford judgment in the sum of $19,118.27 jointly, severally and in solido against said Defendants.
In the consolidated suit, the truck operated by Stanford was owned by Burnell Dedeaux. He sues the same defendants for damages sustained to the truck. It was conceded if judgment were rendered in favor of Dedeaux the damage amounted to $1,400, for which amount judgment was rendered in his favor against Bateman *760 Frozen Foods Company, Ulysees Boyne Wise and The Fidelity and Casualty Company of New York, jointly, severally and in solido.
In the suit for personal injuries of Gary Wayne Stanford, National Surety Company, the workmen's compensation insurance carrier of T. L. James and Company, Inc., employer of Stanford, intervened for workmen's compensation it paid to Stanford as a result of injuries he sustained in this accident. The Trial Court recognized same and gave judgment in favor of the intervenor in the amount of $3,478.28.
Defendants prosecute these appeals from said judgments.
The accident happened in the City of Ponchatoula, Louisiana, on Fifth Street a short distance south of the intersection of Elm Street. Range Road, a highway bearing generally north and south, traverses the City of Ponchatoula wherein it is designated as Fifth Street and is a major traffic artery in the City as well as providing through northerly-southerly traffic extending beyond. Elm Street, extending easterly-westerly on the west side of Fifth Street in the City of Ponchatoula forms a "T" at its union with Fifth Street. Plaintiff Stanford was driving a dump truck loaded with hot asphalt in a southerly direction on Fifth Street. Defendant Wise, the driver of Bateman Frozen Foods Company's truck-tractor combination with an overall length of fifty feet, was proceeding easterly on Elm Street intending to turn right, or south, on Fifth Street. Upon approaching the intersection, according to his testimony, he stopped his tractor-trailer, looked to his right, seeing no approaching traffic from that direction made observation to his left and detected the approaching truck driven by Stanford one block away, which distance was variously estimated to be 200-400 feet. Believing he could safely enter Fifth Street, with his truck in second gear which limited his maximum speed to ten miles per hour, Wise entered the juncture and turned right. From all the physical facts and testimony of the witnesses, the front portion of the tractor-trailer had reached a point at least 100 feet south of the intersection, on Fifth Street, when the left front fender of the truck driven by Stanford struck the right rear end of Defendant's truck with terrific force; in consequence of which the damages Plaintiffs seek recovery for were caused. The evidence further reflects Stanford was paid on a tonnage basis and perforce according to the number of trips he made in hauling and delivering the hot asphalt the more his daily pay would be, so that it is evident he was intending to make expeditiously as many deliveries per day he could. Further, the testimony reveals his truck was of extreme weight and difficult to stop within a short distance when so loaded with hot asphalt. Despite this circumstance, prior to the accident admittedly Stanford was traveling at a speed in excess of 25 miles per hour which he reduced to some extent upon entering the City limits of Ponchatoula.
The Trial Court, in its oral reasons for judgment observed:
"These two suits were consolidated for trial and grew out of an accident that happened in the intersection of Fifth Street or Range Road and Elm Street in the Town of Ponchatoula. In No. 23501 Stanford v. Bateman Frozen Foods, there was an intervention filed on behalf of National Surety Corporation who carried the insurance, workman's compensation insurance for T. L. James Company, Incorporated with whom Burnel Dedeaux had a sub-contract, and Stanford was an employee of either Dedeaux or the T. L. James Company, Incorporated.
"The Court is satisfied that the proximate cause of the accident was the negligence of the Defendant's driver in turning out from Elm Street, which is a secondary street into Fifth Street or Range Road which is a through Highway, a major Highway, without *761 taking the proper precautions to be sure that he could make the turn. He had a 50 foot long tractor-trailer combination that took up practically all the road. The driver of the car, or the truck rather, saw the Stanford truck and was warned of its appearance on the Highway. The fact that he misjudged the time element in it is negligence on his part: McMorris v. Webb, La.App., 67 So.2d 146."
From the testimony of the witnesses, I am of the opinion the driver of the frozen foods truck did not make a precipitous entry into the intersection, but, to the contrary, stopped, as without question he should have done, prior to entering the through artery. I believe he was free of any negligence in entering the intersection, turning to his right and proceeding in a southerly direction upon observing the oncoming truck being driven within the 25 mile speed limit by Stanford some city block distant from the intersection. To require that the driver wait until the highway was free of traffic for more than a block would well nigh prevent the entry into a highly travelled thoroughfare from a subservient road. The record is replete with evidence to the effect the truck being driven by Stanford was to his knowledge loaded with hot asphalt and could not be stopped expeditiously. Such being so, Stanford should certainly notin the exercise of prudence and reasonable caution have driven the vehicle in the confines of the City at the speed admittedly he was proceeding if he were unable to safely brake or stop the truck within a distance of a block.
Mr. Stanford, in his deposition, (he did not appear as a witness in the case) testified he observed defendant Wise approaching the intersection when he was some 200-400 feet therefrom and Wise entered the intersection without stopping although he, Plaintiff, believed he would stop and thereby accord him the right of way. In fact, Stanford related Wise entered Fifth Street at a time he was so close to the intersection he was unable to avoid the collision. His testimony as to the precaution he took upon observing Wise make entrance into the highway consisted of sounding the horn on his truck, applying the brakes and attempting to swerve around Defendant's trailer. It is evident, in my opinion, because of the weight of the hot asphalt load he was hauling he was aware that to attempt to make a sudden stop would be fraught with danger, so that for his own safety he chose rather than to bring his asphalt-loaded truck to a stop to attempt to swerve around the trailer. This is also apparent from the testimony of Officer Peltier who made an investigation of the accident about thirty minutes subsequent thereto and testified Plaintiff's truck left no skid marks whatever and the impact occurred with such force, even though Defendant's trailer-truck was moving in the same direction, it caused a break in the concrete highway at the point of collision; thus making it obvious that Plaintiff, at the time of the contact between the two vehicles, had not reduced the speed of his truck to any marked degree.
As appears from the majority opinion, Plaintiff called as his witness a co-worker, one M. C. Miller, who testified he likewise was driving a truck belonging to Mr. Dedeaux and, like Stanford, was hauling asphalt to the same location. He related they had a practice of staying near each other in making these hauls so that if either got in trouble the other could assist him. On the date this accident occurred, however, Stanford departed from the loading station some time prior to Mr. Miller, although Miller related he caught up with Stanford and was following him at a short distance. He said he observed Wise's truck enter the highway and actually witnessed the collision. Though, without question, the impact must have resulted in a terrific noise, Mr. Miller said because his windows were up he did not hear same. He further testified the subservient road was somewhat hidden by underbrush. On crossexamination of Mr. Miller, counsel for Defendants, *762 in my opinion, was successful in raising positive doubt as to the verity of this witness having witnessed the accident. I am satisfied Mr. Miller did not do so, the basis whereof being he testified that though he observed his friend and co-worker forcefully collide with the rear of the trailer in consequence of which the front of Stanford's truck was pushed backwards penning Stanford in the cab and causing the very serious injuries he sustained, he parked his truck on a side road and sat therein for some thirty minutes. Though he had testified previously the two drivers proceeded to and from the site to which the asphalt was destined in close proximity so as to render aid in the event of trouble, Mr. Miller did not go to the assistance of his co-worker, and he remained in his truck until after the ambulance had arrived and Stanford had been removed and Officer Peltier had made his investigation. He did not give his name to the investigating officer as a witness. I find this incredulous, especially in the absence of any explanation for such conduct.
Admittedly the point of collision was some fifty feet south of the intersection and because of the obvious force with which the trucks collided, in the absence of any skid marks prior to the collision left by the Stanford truck, it appears to me that at the time Wise entered the intersection, Stanford, in the exercise of ordinary and reasonable care, had ample time to avoid this collision had he applied his brakes, but negligently he continued his forward progress and chose instead to swerve and attempt to pass the trailer. Paradoxically, though Stanford complains because of the size and length of the trailer-truck Wise should have exercised greater care in entering the intersection; because of the dimensions of the trailer-truck the movement thereof should have been more apparent and obvious to Stanford.
I am of the opinion the road being clear, the view being unobstructed, the large truck being driven by Wise most apparent, the resultant collision wherein Plaintiffs suffered the damages for which they seek recovery could only be, to say the least, attributable to the negligence of Stanford in failing to keep the speed of the loaded truck within such tolerance that he could, with safety, stop its forward movement upon observing the entry of the truck-trailer from Elm Street, the intersecting road. I am satisfied the proximate cause of this accident was the failure on the part of Stanford to observe the entry of the trucktrailer into Fifth Street and to take reasonable measures to avoid the collision, or, if in fact he did not observe such entry, his negligence results from his failure to make observation of that which was apparent. So, if Wise were guilty of negligence in entering the thoroughfare when Stanford was one block distant from the intersecting street, I am of the opinion Stanford was guilty of contributory negligence proximately causing the accident and thereby precluding the rights of Plaintiffs to recover in their respective suits.
For these reasons I respectfully dissent.