ELLIS, Judge.
On March 8th, 1960 plaintiff, Mrs. Rose Santangelo, was a guest passenger in an automobile being driven by her daughter on Thomas Street in Hammond, La., when it was struck in the rear by an automobile belonging to and being operated by Kenny Dunkin, who was insured by the defendant, North River Insurance Company.
Suit was duly filed, the plaintiff asked for $25,000.00 as damages for “Past, present and future physical pain and suffering, mental pain and anguish and permanent disability * * * ” which was based upon the following specific allegations of the petition:
“That as a result of the accident, the said Mrs. Rose Santangelo received the following injuries, among other to be shown at trial:
“1. Severe whiplash injury of the neck.
“2. Lumbosacral strain or sprain.
“3. Multiple bruises, contusions and abrasions over the entire body and extremities.
*213 “4. Aggravation of a pre-existing nervous condition.
All of which have caused your petitioner to suffer mental pain and anguish, physical pain and caused her to believe she has been permanently disabled.”
The case was tried on the merits and the lower court awarded judgment in the sum of $6500.00 from which the defendant has appealed.
There is no question of liability raised by the defendant’s appeal, only as to quantum which defendant contends is excessive and should be reduced.
The defendant calls our attention to the law as settled by our jurisprudence that damages cannot be awarded on speculation but must be predicated upon reasonable certainty, (Tadin v. New Orleans Public Service, Inc., et al., 226 La. 629, 76 So.2d 910, Bryant v. Ouachita Coca-Cola Bottling Company, La.App., 99 So.2d 152) and should be made so that there is some degree of uniformity in cases involving similar injuries, after taking into account the great variation and circumstances surrounding each injury (Jobe v. Credeur, La.App., 125 So.2d 487), and that the award of damages for personal injuries in similar cases should be considered by the court so that within the limits permitted by particular facts, a degree of uniformity will be maintained in that awards will not be out of proportion, one with the other (Landry v. Southern Farm Bureau Casualty Ins. Co., La.App., 125 So.2d 474, Franicevich v. Lirette, La. App., 124 So.2d 318.)
On the trial of the case, Dr. J. Deloach Thames was called as a witness on direct examination by counsel for the plaintiff and identified a medical report dated April 12, 1960 which he had prepared on the plaintiff and his signature thereto, and counsel for plaintiff immediately offered and introduced the report in evidence which was objected to by counsel for the defendant on the ground that the doctor’s testimony was the best evidence. The objection was overruled and the report allowed to be introduced as evidence in the record.
The same offer, objection and ruling was made by the lower court as to a report of Dr. A. J. Feder, when he was called on direct examination by counsel for plaintiff. Counsel for defendant on appeal has raised this question and submits that the best evidence of medical findings and treatment is the testimony of the medical witness and not his written report and the report cannot be admitted into evidence over the objection of opposing counsel, citing Breaux v. Laird, 230 La. 221, 88 So.2d 33. This case involved a suit for damages for alleged non-compliance with building plans and specifications and resulting defects in the construction of a dwelling, in which the Supreme Court of Louisiana held that the “ ‘best evidence rule’ requires that the highest degree of proof of which a case from its nature is susceptible, if accessible, be produced,” and that, if the best evidence cannot be produced, then in that event secondary evidence becomes admissible. In the case at bar the doctors could have used their reports to refresh their memory in testifying, but upon the timely objection, which was made as shown by the record in this case, to the introduction of the report itself, it should have been excluded. We will not consider the reports erroneously allowed in the record.[1]
The evidence reveals that the collision was of a minor nature in that there was only $83.00 damage to the car in which plaintiff was riding as guest passenger, and Mr. Dunkin’s car “showed signs of an impact but nothing knocked loose.” The police officer testified that the Santangelo car had damage to the rear bumper and the *214 gravel guard, and Dunkin testified that there was a small hole in one of the rear lights and that the bumper was bent and that after the accident they went to the insurance office and agreed that she should have a new bumper to replace the bent bumper and have her light fixed. The bill for the bumper was $44.00. Dunkin also testified that he was in second gear at the time he struck them and was going approximately four miles an hour. From the record we are convinced that the force of the impact was not severe but, on the contrary, very moderate, however, we realize that it is possible for one to be injured where the force of the impact is not excessive.
It is also shown by the police officer and Dunkin that immediately after the accident the plaintiff and her daughter stated that they were not hurt, however, they did inquire as to insurance, and were taken to the agent’s office by Dunkin. The accident occurred around 12:30 P.M. and Dr. Feder testified that plaintiff came to his office about 1:00 P.M.
Dr. J. Deloach Thames was placed on the stand by the plaintiff although it was shown that he had made an examination of the plaintiff for the defendant company. It is further shown by the record that he was not summoned as a witness by the defendant as the result of a telephone conversation with one of the counsel for plaintiff wherein he stated that they had subpoenaed this witness and he would be present in Court, and for that reason counsel for defendant did not subpoena him. This doctor testified that he had made x-rays of the plaintiff and from these, as well as his examination, he found that she had arthritis of the neck and back and assumed that this condition existed prior to the accident. The examination was made on April 12, 1960 which was approximately one month after the accident. Upon redirect examination Dr. Thames testified that the degenerative process of the vertebrae “could have been” increased by the accident and “It could have * * * ” been aggravated further by the accident. He had never examined the plaintiff prior to the accident nor subsequent to his examination of April 12, 1960.
Dr. A. J. Feder examined the plaintiff immediately after the accident at approximately 1:00 P.M. and submitted a medical report dated March 29th, 1960 as a result of this examination, and one of April 2nd, 1960, both of which we have heretofore considered and held were improperly allowed in. the record. He also submitted another report dated October 17, 1960 which was timely objected to and which we are of the opinion was improperly allowed and will not be considered. This doctor’s bill was introduced, however it is not in the record,, but it is shown by the testimony that it amounted to approximately $739.00 which included $125.00 for drugs furnished by this doctor and, in addition, a great portion of the bill was for heat treatments. It was stated in argument and also argued in brief that this bill has been paid by the defendant company and the amount is indicative of the seriousness of plaintiff’s injuries. We will only consider the amount of the bill in connection with the actual testimony as to the specific injuries proven by the record. The record is devoid of testimony specifically showing continuous or great pain as a result of the accident. Dr. Feder testified that the medical bill which he issued to the plaintiff “through the last day of November,” (1960), including the $125.00 drug bill, was a total of $645.00 and that he had’ seen her twelve times “since that time and we have given her drugs and her bill is $94.00 additional.”
On cross examination Dr. Feder testified that he had taken x-rays of plaintiff and' also had x-rays taken by Drs. Malen and Woolfolk. which showed no fractures either to the neck or the back, but pre-exist-ing arthritis or hypertrophic changes which-take a long period of time to develop and' are usually of long standing. Dr. Feder “didn’t interpret them as severe, I interpret them as mild, in other words, just ordinary forty-five year old changes, perhaps a little advanced and more so in the back and in: *215 the spine.” This doctor gave the plaintiff a special corset for her back, gave her traction, “that is the only treatment she had to her neck plus physical therapy plus diathermy and ultrasonic sound.” Dr. Feder was asked if it was not true that the x-rays showed no injury to plaintiff’s neck or to her back and he answered:
“That is something that we — you will have to inject because there is definitely an opening in the cervical vertebra and there was one down in the lumbar sacral joint region, in other words and whether that was there before the accident or after I don’t believe anybody can say that or whether it was aggravated by the strain or opened up at that time, but there was definitely a narrowing of both — a disc injury in the neck and in the back, but I figured it as a sprain. Due with the changes that were in the bone probably aggravated the condition, I stated in there that I couldn’t definitely state whether there was any deeper injury in the back, the neck cleared — the neck began to improve in about 3 to 4 weeks and it became an exasperating thing, she would go two weeks and feel good and think she was well and then she would come back and couldn’t hardly move her neck and that would go on for different periods, which I think, with the whiplash injury that she did have plus the definite pathology that was present, in my opinion, prior to the accident, the hypertropic changes, which definitely aggravated the condition and the condition aggravated the hypertrophic condition, I think it was only normal for that to go in the way that it did.
“Q. Did you take any x-rays of Mrs. Rose Santangelo, the mother, since the first ones you took in March?
“A. I haven’t rechecked them. I would see no reason to except to increase the medical bill.”
On re-direct examination Dr. Feder testified that as of the date of the trial her neck was “ninety-five per cent well, maybe more.” He stated that she had an aggravated condition in her back and whether this hypertrophic change “has changed into arthritis due to the injury, which is usually the case, a traumatic arthritis in a case like this is very common, is something that we will have to wait and see, but I would say just judging this patient — now this patient has been my patient for the past 15 years and I have seen her many times and I have never had a complaint in either one of these areas from this particular patient and judging from what she has, lately and I have no reason to feel that the patient is telling me anything but the truth because I have found occasions where she has had definite spasms of muscle in her back and on that basis and limitation of motion also, so on that basis I would say that she was going to be symptomatic with that back for an undetermined period of time and I will state now that I don’t believe that I or any other man or any other bone specialist or as far as that is concerned, anybody at the Mayo Clinic can state how long she is going to be symptomatic or how much treatment she is going to have. I can’t do it and I defy anybody else to do it.”
Dr. H. R. Soboloff, an exoert in orthopedic surgery and certified by the American Board of Orthopedic Surgeons, as well as an assistant professor at Tulane University, testified on behalf of the defendants that he had examined the plaintiff on the 13th of January, 1961 and that the latter complained of pain in the areas of her neck and back. He was of the opinion that plaintiff still had some residual findings in the neck and that if Dr. Feder felt that it was 5%, “I would say it was about that.” As a result of the examination of plaintiff’s low back area, he compared the x-rays that were made available to him by Dr. Feder, which were taken March 31, 1960, about three weeks after the accident, with the x-rays film that he himself had taken in January, 1961 at the time of his examination, and found that the x-rays showed essentially the same condition and “that no change has *216 occurred from the standpoint of the honey x-ray picture.” tie diagnosed her trouble in the low back area as moderately severe lumbo sacral joint disease.
Plaintiff testified that prior to the accident she had been active in helping her husband in the planting, growing and gathering of strawberries on their farm, and that subsequent thereto she had been unable to do this work.
Counsel for defendant has cited approximately fourteen cases to support his contention that the award should not exceed $1500.00 in the case at bar, and in those cases the awards ranged from $667.61 in Eatman v. Parsons, La.App., 113 So.2d 477, to $2500.00 in Griffith v. Yellow Cab Co. of Shreveport, La.App., 123 So.2d 769 and Dowies v. Traders and General Insurance Company, La.App., 124 So.2d 610, whereas counsel for plaintiff has cited Marcantel v. Southern Farm Bureau Casualty Co., First Cir., 1958, La.App., 102 So.2d 879 in which this court awarded $10,000.00, and the recent case of Self v. Johnson, 3rd Cir., 1960, La.App., 124 So.2d 324, in which the Court upheld an award of $9237.50.
In the Marcantel case, the plaintiff had a congenital condition or abnormality of his back and as a result of the accident was in the Kinder Clinic for approximately seven days and while the testimony was conflicting, this Court found that he suffered rather constantly with his back and very severely as a result of a myelogram, and his back injury was described as a possible disc injury, with the preponderance of the medical testimony against such a condition, “to a severe back strain to a mild back strain.”
We do not consider the Marcantel case as similar factually to the case at bar. We find no injury as a result of the accident proven as having caused any change in plaintiffs back condition. She is limited to a neck injury with a 5% resultant disability. In the case at bar plaintiff stated immediately after the accident to the police officer and the driver of the other automobile that she had suffered no injury in the accident, and accompanied her daughter to the insurance office where claim was made for damage to the automobile, and immediately thereafter plaintiff went to Dr. Feder’s office where, apparently from that moment on, she either complained of injuries or injuries were found by the doctor, who treated her practically every week or several times a month with various forms of heat treatment and referred to having given her traction for her neck and a corset for her back. He referred to having found muscle spasm on occasion and limitation of motion.
In the Self case the Court found that an award of $9237.50 to plaintiff, a “38-year-old woman who suffered a ‘whiplash’ injury to cervical spine was not excessive where she was hospitalized under neck traction for eight days following accident and was under physicians care for approximately eight months following accident, during which time she wore collar-type brace using neck traction at home, and where evidence supported finding that she sustained permanent disfigurement and neck disability.” This case is not similar to the case at bar other than the length of treatment which, from the record in the Self case, was undoubtedly justified. We do not specifically hold that the treatment in the case at bar was not completely justified but that the facts and resultant injuries and disability in the Self case were far more serious than in the case at bar.
Considering the facts as shown by the record in this case and the jurisprudence, we are of the opinion that an award of $2500.00 would be most adequate to compensate plaintiff for the damages suffered as a result of this accident.
It is therefore ordered that the judgment of the District Court be reduced to the sum of $2500.00 and in all other respects affirmed.
Amended and affirmed.

. We have ruled upon the contention of the defendant that these reports were erroneously allowed in the record over his objection as if they were actually in tlie record. The fact is that these reports are no where to be found in this record.