ELLIS, Judge.
This is a suit to recover for personal injuries, loss of earnings, medical expenses, and property damages claimed by plaintiff as a result of an automobile accident which occurred on the outskirts of Hammond, Louisiana, on April 22, 1960. It appears that a pick up truck owned and operated by plaintiff was proceeding in an easterly direction when the automobile owned by Southern Bell Telephone and Telegraph Company and operated by its employee, Pierre Poursine, who without looking, backed out into the highway into the side of plaintiff’s truck.
Suit was filed by plaintiff and damages in the amount of $40,000.00 were asked for, said damages being itemized as follows:
$323.00 Medical bill of Dr. C. D. Alessi---Transportation to the office of Dr. C. D. Alessi
140.00 70 trips at $2.00 per trip_
50.00 Medical bill of Dr. J. Willard Dowell_
Travel expense to the office of Dr. Dowell: 1 trip at $10.00 per trip-1 — [1] o o o
Medical bill of Seventh Ward General Hospital, x-rays to o o o
4.00 Transportation expense to Seventh Ward Hospital; 1 trip at $4.00 per trip-
186.84 Property damage to truck-
5,000.00 Past, present and future loss of income & wages_
$34,266.16 Past, present and future physical pain and suffering mental pain and anguish and permanent disability
Plaintiff s specific injuries resulting from the accident were (1) severe whiplash injury of the neck, (2) severe back sprain, (3) multiple bruises, lacerations, and contusions over the entire body and extremities, which allegedly resulted in mental pain and anguish, physical pain and suffering, and rendered him disabled to continue his work as a plumbing contractor, caused him to believe he had been permanently disabled.
At the trial on the merits the lower court awarded plaintiff judgment in the amount of $6,961.84, and fixed the expert witness *877 fee of Dr. J. Willard Dowell, orthopedic specialist, at $200.00 and the witness fee of Dr. C. D. Alessi, General Practitioner, at $75.00. The damages were not broken down in the judgment for particular items, but in his written reasons for judgment the trial judge stated that he was awarding $4,750.00 for pain and suffering past, present and future. Medical bills of Dr. J. Willard Dowell in the amount of $50.00 and Dr. C. D. Alessi in the amount of $323.10 were allowed, as well as the bill from the Seventh Ward Hospital in the amount of $20.00; the property damages to plaintiff’s truck were allowed in the amount of $186.84; $10.00 from Hammond to Baton Rouge to visit Dr. Dowell; travel expense to the Seventh Ward Hospital was fixed at $2.00; and transportation expenses for 70 trips from the plaintiff’s home to the office of Dr. Alessi in Hammond were fixed at $1.00 per trip or $70.00. The lower court further fixed the award for loss of wages at $1550.00.
There is no question of liability raised by the defendant’s appeal. The allowance of $393.00 medical expense is not contested; and the damage to the truck in the amount of $186.84 is not contested. Defendant appeals, contending that the award of $4750.00 for pain and suffering, past and future, is excessive and should be reduced to $2,500.-00. Defendant further contends that plaintiff failed to sufficiently prove any loss of earnings and, therefore, this item should be denied in its entirety. Defendant further contends that travel expense to Baton Rouge should be reduced to $10.00 and ail other travel expenses reduced to a total of $15.00.
Plaintiff has answered the appeal, contending that the judgment should be increased to the sum of $11,833.84, itemized as follows:
Pain and suffering, past and future.-$7,500.00
Damage to truck- 186.84
Medical expenses- 393.00
Traveling expenses- 154.00
Loss of income for 36 weeks @ $100.00 per wk.- 3,600.00
Total $11,833.84
In support of defendant’s contention that the award for pain and suffering, past and future, should be reduced to $2,500.00, our attention is called to Santangelo v. North River Insurance Company, 144 So.2d 212, La.App. 1st Cir. (1962) wherein this court reduced the award of $6,500.00 by the trial court to $2,500.00 for a whiplash injury. Able counsel for defendants also submitted a list of all the decisions of the appellate courts of this State involving whiplash injuries, and that for the year 1961 prior to the trial of the case in June, counsel averaged the award for whiplash injuries and arrived at a mean figure of $2845.00.
We are cognizant of the established jurisprudence that damages cannot be awarded on speculation but must be
predicated upon reasonable certainty, Santangelo v. North River Insurance Company, supra, and cases cited therein, and there should be some degree of uniformity in cases involving similar injuries after taking into account the great variation and circumstances surrounding each injury. Jobe v. Credeur, 125 So.2d 487, La.App. 1st Cir. (1960) and Santangelo v. North River Ins. Co., supra.
At the trial of the matter, plaintiff offered the testimony of Dr. J. Willard Dowell, orthopedic specialist of Baton Rouge, Louisiana, Dr. Carlos D. Alessi, General Practitioner of Hammond, Louisiana, as well as his own testimony. Dr. Alessi treated plaintiff from the date of the accident on April 22, 1960 until the date of the trial *878 which was on June 28, 1961. Between April 22, 1960 and August 1, 1960 Dr. Alessi saw the plaintiff on approximately 70 occasions, during which time he administered microtherm treatments two to four times a week, muscle relaxants, nerve relaxants, and head traction at various intervals. Dr. Alessi was of the opinion that plaintiff was totally disabled from April 22, 1960, the date of the accident, to July 26, 1960, approximately three months. On the latter date Dr. Alessi thought that plaintiff was able to return to work and so advised him. Plaintiff attempted to work but returned to Dr. Alessi and told him that he was unable to do so and the latter advised him to stop the work. Dr. Alessi had known plaintiff for many years and had been his family physician and stated positively that the complaints made by plaintiff were, in his opinion, due to the injury in the accident. Plaintiff continued to have intermittent headaches after July 26, 1960 and made frequent visits to Dr. Alessi complaining of severe nervousness, tightness of the chest to the extent that he could not catch his breath, and was being treated by Dr. Alessi practically up to the date of the trial. The case was tried on the 28th day of June, 1961 and Dr. Alessi testified that the last two visits from the plaintiff were on June 2nd and June 9th, 1961. The plaintiff had never had these symptoms before the accident. Dr. Alessi stated that he had seen him anywhere from “one to two or three or four times a month. * * * ” subsequent to July 26, 1960.
Dr. Dowell, the orthopedic specialist, testified that on,his examination of June 13, 1960 plaintiff had a sprain of the neck and he recommended head halter traction, and that plaintiff was partially disabled. In pursuance to Dr. Dowell’s recommendation, Dr. Alessi applied head halter traction three to four times a week, gradually diminishing down to one time a week up to July 26, 1960. Dr. Dowell on cross examination, in answer to a question seeking his classification in general as to the severity of the whiplash injury to the neck of the plaintiff, based upon his examination of June 13, 1960 stated that, “It is hard to classify these. I would probably use the term as moderate injury.”
Although there is some minor conflict in plaintiff’s testimony, we are satisfied that he did suffer a moderately severe whiplash injury with resulting severe neck pains and headaches immediately after the accident on April 22, 1960 until July 26, 1960 and was totally disabled during this time. Thereafter he experienced intermittent pain in his neck, headaches and developed complaints of severe nervousness and tightness of the chest for which he was treated by Dr. Alessi as late as June 9th, 1961. He was only able to do the lightest kind of duties incidental to plumbing work, such as fixing leaky washers and valves.
Able counsel for the parties to this suit have prepared exhaustive briefs upon the question of quantum. Counsel for the defendant had submitted in his brief a list of all the decisions of the appellate courts of this state involving whiplash injuries including those coupled with other injuries and without excluding any of the high awards, for the year 1960 and 1961 to date totalling thirty eight cases with total awards of $103,248.13, giving an average award for whiplash injuries of $2717.00, though in a number of the cases the whiplash was not the only injury. Counsel relies particularly upon the case of Santangelo v. North River Insurance Co., La.App., 144 So.2d 212, decided by this court in which an award of $2500.00 was made for a whiplash injury. The writer of this opinion was also the organ of the court in the Santangelo case and does not consider that case as completely controlling in the case under consideration for that case was really viewed as being on the border line of a mild to moderate whiplash injury. We classify the case at bar as moderately severe. The disability was total for approximately three months and then continued with intermittent neck pain, headaches and nervousness to the date of trial, approximately 14 months. In addition, the testi *879 mony of Dr. Alessi would indicate that the nervousness had not lessened to any extent, although he made no prognosis as to its duration.
Counsel for the plaintiff in his exhaustive brief, while disagreeing with counsel for defendant that the court should take an average of all cases, cites McDowell v. Diaz, 4th Cir., 145 So.2d 634 in which Judge Tate quoted from Ford State Farm Mutual Auto. Ins. Co., La.App.2d Cir., 139 So.2d 798 to the effect that it must be recognized that an award for pain and suffering cannnot be determined with exactness or according to any standard method of measurement, and that our jurisprudence does use the determination in previous cases as a guide by which to estimate damages for particular injuries in assessing the quantum of damages, and therefore each case must be considered on the basis •of its own factual circumstances with respect to its evaluation and even though this is done, the rendition of any decision as to quantum necessarily involves somewhat of an arbitrary determination as to the monetary award for pain and suffering. Counsel for plaintiffs then calls this Court’s attention to and cites as “Exhibit No. 1” in his brief, a compilation by the A B Federal Reporter Service of New Orleans; La., covering all awards made in personal injury suits in the United States District Court for the Eastern District of Louisiana for the years 1956 through 1960, and respectfully requests this court to take cognizance of the fact that there was a total of 24 verdicts for whiplash injuries with a total award of $237,811.83 which averaged out $9908.82 per case. While the averages in the State and Federal Courts are enlightening, we still must be bound by the particular facts of each case and the awards made in prior cases involving whiplash injuries based upon similar facts. We cannot be controlled by awards made by juries in cases tried in Federal District Courts.
Counsel for the plaintiff relies in the main upon the case of Mrs. Geo. F. Bartholo-maus v. H. G. Hill Stores, Inc., decided by the 4th Cir. Court of Appeal of Louisiana on June 24, 1957 and reported in 97 So.2d 82. The opinion reveals the following injuries to the plaintiff:
“ * * * Her injuries may be placed in three general classifications, to-wit: bruises and contusions, a whiplash injury to the cervical spine, and a sequela of occipital nerve neuralgia. She was treated by her private physician, Dr. James T. Nix, and was examined by Dr. Samuel A. Romano, on behalf of defendant, on January 3, 1955; she was also examined by Dr. James L. Lenoir at the behest of her own attorney on May 27, 1956 while the trial was in progress.
* ‡ ‡ * * #
“It also appears that Mrs. Bartholo-maus at first had her back strapped with tape for several weeks, and then was required to wear a lumbosacral support for several months and has worn it for symtomatic relief from pain in the lum-bosacral region as late as August of 1955. Three types of cervical collars also were prescribed and worn by her almost continuously, except when eating or while in bed. Dr. Nix identified these as a felt collar, a foam rubber collar, and a steel frame cervical brace.
“Dr. Nix on his last examination found that the only evidence of a residue of the sprained neck was muscle spasm, and he considered plaintiff to have about a one-tenth residual condition with sporadic pain from the lumbosacral strain.”
The Court in the above case, after a discussion of the testimony of Dr. Lenoir, the only orthopedic surgeon .to examine the plaintiff, to the effect that he found the presence of muscle spasm to a slight degree which he attributed to the wearing of the neck brace rather than any residual from the injuries suffered by plaintiff and *880 that there was no evidence to warrant immobilization of the neck and he believed it would be beneficial if plaintiff would make some attempt to use her neck, the court concluded :
“We do not think that there are any permanent injuries and the discomfort which Mrs. Bartholomaus was experiencing at the time the case was tried in the lower court should disappear in a reasonable time. She was allowed $6,000 for her injuries and we believe that such award does substantial justice in the matter. In Attaya v. Zimmerle, La.App., 83 So.2d 676, the plaintiff was awarded $2,500 for an injury to the neck' similar to that sustained by Mrs. Bartholomaus, but it is clear from the medical testimony the claimant in the instant case was injured more severely than the plaintiff in the cited case.”
While there is some similarity in the cited case and the one under consideration, in the latter we do not have bruises or contusions or any specific testimony of neuralgia of the nerve at the base of the cranium, nor any lumbosacral injury or strain which required any strapping or lumbosacral support, as in the cited case. In the light of the jurisprudence the case at bar will not support an award of $6000.00, however, plaintiff’s injuries were more severe than in the case of Downs v. Hartford Accident and Indemnity Co., La.App., 116 So.2d 712 and which this Court used as a criterion in Mapes v. State Farm Mutual Auto. Ins. Co., La.App., 121 So.2d 358, and in both of these cases the plaintiffs were awarded $3000.00.
 As to the question of loss of earnings, plaintiff sought to recover the sum of $5,000.00 for past, present and future loss of income and wages. Since it has been established that plaintiff was totally disabled from April 22, 1960 until July 26, 1960 or approximately three months and partially disabled thereafter to date of trial, he is entitled to recover as special damages any loss of wages or earnings sufficiently proven. Aside from the uncorroborated testimony of plaintiff as to what his loss of income might have been during the three month period, there is no evidence in the record establishing loss of income. The plaintiff was a self-employed plumber, and his income tax return for the year 1959 showed a loss of $1,870.77 from his plumbing business. A profit and loss statement for the year 1960 combined a grocery store owned by plaintiff and his plumbing business and shows a net profit of $3,315.53, plus plaintiff’s earnings during the year in which he was hurt was in excess of $3,000.00 of his earnings during the previous year, and does not amount in any sense to proof of wages.[1] See Jobe v. Credeur, 125 So.2d 487, La.App. 3rd Cir. (1960); Jenkins v. Audubon Insurance Co., 110 So. 2d 221, La.App. 1st Cir. (1959). However, in the Jobe case, supra, although there was not sufficient proof of loss of earnings or profit of plaintiff’s business, the court allowed $1,500.00 for disability in addition to pain and suffering. In this case the trial court had allowed $3750.00 for loss of earnings for a business man as the sole owner of an oil drilling business who merely estimated his losses, as his business was run by employees. The Court of Appeal disallowed this loss of earnings but gave plaintiff $1,500.00 for disability in addition to pain and suffering. The basis of this award is shown in the following statement made by the Court:
“The difficulty with which- this court is faced is this: Although it is entirely possible that due to the plaintiff’s absence from his own one-man drilling enterprise there was a loss in efficiency and in profits, the plaintiff’s own un-contradicted testimony is also open to *881 the construction that his employees operated his business efficiently during his absence so as to avoid any special damages to him by reason of loss of income. See Jenkins case, above-cited. We cannot therefore say that the plaintiff has borne his burden of proving by way of special damages any loss of income.
“However, by reference to the plaintiff’s petition, it may be seen that he prayed for damages for ‘loss of income and total disability’ in the amount of $3,000 and for ‘partial disability’ in the amount of $2,000. As was stated under somewhat similar circumstances in Hidalgo v. Dupuy, La.App. 1 Cir., 122 So.2d 639, 646, certiorari denied: ‘But because the plaintiff has not produced and in fact cannot produce any evidence of specific monetary loss of earning to prove the special damages alleged by his supplemental petition, does not mean that he is not entitled to any award under the claim of his original petition for general damages for past and future disability, which disability as previously noted' is proved. * * * ’ (Citations omitted.) (Italics ours.)”
Since the plaintiff in the instant case prayed for damages for loss of income and permanent disability and has not proved, and, in fact, has not produced any evidence of specific monetary loss of earnings to prove the special damages alleged by his petition, we feel that he is entitled to recover under the claim for general damages for disability, which disability is previously noted as proved.
Under the circumstances, an award of $1000.00 would adequately compensate plaintiff for the approximately three months of total disability and subsequent partial disability.
As to travel expenses, it was proven that plaintiff made seventy trips to the' office of Dr. Alessi, the round trip distance of about two miles. Under the circumstances, we feel one dollar ($1.00) per visit travel expense is reasonable and fair. The award of $10.00 travel expense for the visit to Dr. Dowell in Baton Rouge, a distance of approximately 45 miles, is not seriously contested by defendant and is affirmed. Transportation expenses to the Seventh Ward Hospital, a round trip distance of approximately four miles, in the amount of $2.00 is reasonable and fair under the circumstances.
In summary, we have reduced the award of plaintiff for pain and suffering, past and future, to $4,000.00 and we have disallowed the award of $1,550.00 for loss of earnings but allowed by way of general damages the sum of $1,000.00 for total and partial disability and reduced the trial court judgment by a net of $1300.00.
Accordingly, the trial court judgment is amended by reducing the award from $6961.84 to $5,661.84. As thus amended it is affirmed in all other respects, costs of this appeal to be paid by plaintiff.
Amended and affirmed.
REID, J., recused.

. Although the copy of plaintiff’s income tax return for 1959 and 1960 were apparently introduced, they are not in this record. We are, however, quoting from the undisputed testimony as to these returns.