CHASEZ, Judge.
Plaintiffs, Roy Manning and his wife, Theresa Manning, sued to recover damages resulting from a fall suffered by Mrs. Manning on the premises of defendant, Morrison’s Cafeteria of Lee Circle, Inc. Other defendants were originally named but ar.e no longer involved in this lawsuit.
From a judgment in favor of Mr. Manning in the amount of $70.00, and in favor of Mrs. Manning in the amount of $1,000.-00, defendant appeals. Plaintiffs answer the appeal, asking that the award to Mrs. Manning he increased to $3,500.00.
The accident occurred at about 1:30 a. m., July 21, 1960, in the kitchen of defendant’s cafeteria. Plaintiffs were among a large group to whom defendant had ' made its premises available for a party and served a seafood supper, after regular cafeteria closing hours, for a price fixed by the number of persons attending. The group provided its own beer, which was chilled in defendant’s refrigerator. The party ended at 1:00 a. m., and shortly thereafter defendant’s waiters advised Mr. Manning, who had charge of the group’s arrangments, that he should remove from the refrigerator- the beer which still remained. Mr. Manning, therefore, proceeded to the kitchen, accompanied by Constant J. Probst, Sr., and Robert H. Norman, and undertook the removal of the surplus beer. By about 1:30 a. m., Mrs. Manning became concerned that the men had been gone too long, and, therefore, she proceeded into- the kitchen to determine the cause of the delay. She noticed a wet looking area on the floor, as if it had just been mopped but not dried. She assumed the liquid on the floor was water, and tried to walk through it. But when she took a step or two, she slipped and fell, injuring her right ring finger. The floor itself was a non-skid tile, made with bits of an abrasive in its surface. Mrs. Manning was wearing medium-height wedges, a wedge-soled women’s shoe presenting a flat surface to the floor.
The foregoing facts appear to be well enough established, although there was some dispute as to what part of the kitchen floor was wet. Defendant suggests that the element of contributory negligence would be more clearly shown, if Mrs. Manning had had to walk the 20 feet - across the kitchen before reaching the wet area. However, since Mrs. Manning did in fact see the wet area before she attempted to walk across it, we think it makes little difference where the wet area was.
The central factual dispute is- whether the wet area was covered with an oily substance, as contended by plaintiffs.
There is expert testimony to show that the title flooring’s non-skid surface might be slippery with an excessive amount of oil although it would not be slippery from water. A sample of the tile is in evidence in the record.
Mrs. Manning testified that she saw the wet area, “wet like if it had been mopped but not dried.” “So I assumed it was-water, and I proceeded to walk through it cautiously but I didn’t. Soon as I put my foot on it I slipped and fell and hit my finger.” She also testified she had tried to tiptoe, so as not to splash herself. She and her husband both testified that all her clothes and shoes had oil on them and a bad smell from the oil; that Mr. Manning had- to put brown paper on the seat of their car to protect it from the oil ~ that they were unable to clean the clothing satisfactorily and it was therefore a total *820 loss. Mr. Manning further testified that the day after the accident defendant’s manager had apologized for the accident “and mentioned that one of his cooks, I believe in cleaning or moving the deep well fryer, had burnt his hand and dropped the whole ■can on the floor and that the function had started so soon that they hadn’t had time to clean it up.”
The manager, Robert H. Linderman, testified he didn’t remember much of his conversation, but “it might be possible” he had said what Mr. Manning attributed to him.
Mr. Probst, one of the men who assisted Mr. Manning in removing the beer from the kitchen, testified that “I slipped a little bit going- back to the walk-in locker and somebody mentioned to me to be careful, that the floor was slippery, and looked like something had spilled on tire floor, something liquid, and it made it slippery.” And he further testified, “Well, where she fell they had the substance there. It was all wet; sort of a shiny substance. It looked like oil to me. Somebody might have spilled like a salad oil or something on the floor.”
Defendant’s witnesses included one of the waiters who had worked the night of the accident and a clean-up man. Their testimony was to the effect that there was •no oil or oily substance on tire floor.
Defendant argues that plaintiff’s failure to produce a lady who was walking behind Mrs. Manning when she fell should be construed against plaintiffs; yet defendant also failed to produce the other waiters who had worked that night. We believe that the non-production of these witnesses must be disregarded, especially since the witnesses could have been called by either •side.
We believe the preponderance of the evidence iir the record supports plaintiffs’ allegations of fact, and, in any case, the district court did not commit manifest error hr so concluding.
Defendant argues that Mrs. Manning was a mere licensee and not an invitee, and that defendant therefore owed her “no greater duty than to see that (she) was not wantonly or purposely injured”, quoting from Foshee v. Grant, 152 La. 303, 93 So. 102 (1922). (But see Alexander v. General Accident Fire & L. Assur. Corp., 98 So.2d 730 (La.App.1958) and authorities there cited.)
The record here shows that, as part of its business visit to defendant’s premises, Mrs. Manning’s group was, by express direction, to remove the beer remaining after the party terminated. Mr. Manning and the two men who actually removed the beer were therefore invitees in the kitchen area. In our opinion, Mrs. Manning’s presence in the kitchen area also for a business-related purpose, namely to determine the cause of the delay in accomplishing the beer removal. She (or some other member or members of the group) had the right, within the contemplation of the overall business arrangements with defendant, to enter the kitchen for such purpose or similar purpose, e. g., to determine whether additional men were needed for the beer removal or the like. Mrs. Manning, like her husband, was in the kitchen area for the purpose of the group’s business with defendant, and she was therefore an invitee; Cannon v. Great Atlantic & Pacific Tea Company, 146 So.2d 804 (La.App.1962). Defendant owed her the duty of “reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises which may be unreasonably dangerous and correction thereof or a warning to the invitee of the danger”; Alexander v. General Accident Fire & L. Assur. Corp., 98 So.2d 730 (La.App.1958). Defendant here was under a duty either to remove the oily substance from its floor, or to warn Mrs. Manning that the visible substance was not water but oil. Its breach of that duty caused the damages suffered by plaintiffs, and the District Court properly held defendant liable to them.
*821 On quantum, both parties are dissatisfied. As a result of her fall Mrs. Manning suffered a dislocation of her right ring finger and a fracture in the base of its middle phalanx, described as a marginal fracture with rotation of the fragment, with resulting pain, stiffness and swelling, which continued to some extent for some months after the accident.. Mrs. Manning’s duties required her to use the finger in typing. Under the circumstances we believe the amount of $1,000.00 fixed by the District Court does not require any modification.
Accordingly, the judgment appealed from ■is affirmed at defendant’s cost.
Affirmed.