BAILES, Judge.
This is an action to recover damages, both general and special, arising out of an accident suffered by the plaintiff when he fell through an open manhole on the barge “Barre” which was owned by Union Producing Company and insured by Fidelity & Casualty Company of New York. This action was brought against both the owner and the insurer, seeking judgment in solido against them. The trial court awarded plaintiff judgment in the amount of $25,000' for general damages, and special damages were awarded in the amount of $3,188.59. From this judgment, the defendants appeal.
From our careful study of the record, we have concluded that the judgment of the trial court must be reduced for the reason the injury suffered by the plaintiff was a maritime tort, and in order for the defendant tortfeasor to be cast for the entire damages, its negligence alone must have been the proximate cause of the damages. We find the plaintiff, too, was negligent and that his negligence was a proximate and concurring cause of the injury he suffered. Consequently, plaintiff under the doctrine of comparative negligence must share with the defendants in his loss. To this extent, the judgment of the trial court *394 must be reduced, and as we reduce it, it will be amended and affirmed.
The accident which gave rise to this cause of action occurred on January 12, 1958. This suit was filed on January 9, 1959. and tried on its merits on January 13, 1960. The matter was submitted to the trial court for decision on October 1, 1962, and judgment of the trial court is dated January 18, 1966.
,/The plaintiff was a working partner in a partnership with his father in the business of hauling. On the date of the accident, ■defendant, Union Producing Company, or'•dered from the plaintiff’s company several loads of shell which had to be hauled to a place known as Lirette landing in the lower «or southern part of Terrebonne Parish. As the shells were to be dumped some distance from Lirette landing, it was necessary that the dump truck loaded with the shell be transported across a navigable canal. At this landing, defendant, Union Producing Company, maintained a barge named “Barre” which was moved about by a tugboat named “Regulator.”
This barge, according to a drawing thereof in the record, was ninety feet long by a width of twenty-eight feet. It had no superstructure whatever, and apparently was constructed in such manner as to have compartments within its hull. On the top side of this steel vessel were six manholes which opened into some or all of the compartments under the decking. These manholes were round and about eighteen inches in diameter. Ordinarily and customarily these manholes were fitted and closed by manhole covers. On this date, however, all of the manholes were open and no covers were located on the barge.
The accident .which involved the plaintiff occurred on his second trip, the first trip having been completed uneventfully. On the first trip, as on the second one, the plaintiff testified that he drove his loaded truck from the dock on the barge, secured the truck by means of the hand brake and alighted to the barge to watch' his truck for movement. He dumped his load of shells at the appointed place and drove back on the barge and followed the same procedure while on the barge. On the return after dumping his second load, he alighted from his truck after securing it in position and walked towards the bow of the barge where one of the workmen was waiting to tie the rope securing the barge to the dock. The return trip from the time he drove on the barge until it was secure at the dock took from five to seven minutes. After talking to the deck hand about a personal matter, he either turned to walk away or he took a step backward, in either event, plaintiff stepped into the open hatch or manhole. In doing so, he broke his left leg and otherwise sustained painful injuries, all of which will be more fully discussed infra.
Some members of the crew in charge of the barge testified they knew the hatches or the manholes were opened but they did not see the covers or know of their whereabouts. It appears that the barge was used the previous day to haul water to a leasehold and it was thought that it was then the manhole covers were removed from the barge.
Clearly what is involved here is a maritime tort. It occurred on board ship in navigable waters. There is no dispute between the parties that the plaintiff had no duties to perform in the operation and movement of the barge. It is perfectly clear by definition that plaintiff was a business invitee on the barge and the Union Producing Company owed him the duty as enunciated in the case of Kermarec v. Compagnie Generale Transatlantique (1959) 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550. In this case, the plaintiff came aboard the vessel, S. S. Oregon, berthed at a New York City pier, for the purpose of visiting a member of the ship’s crew. After visiting for several hours, he started to leave the ship and in doing so fell while descending a stairway. He based his action on the negli-génce of the crew in affixing a canvas runner to the stairway.
*395 In this Kermarec case, the Supreme Court stated:
“(7, 8) It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew. Leathers v. Blessing, 105 U.S. 626, 26 L.Ed. 1192; The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633.
******
“(9) * * * We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case. * *
The position of the defendants in this case is that under the maritime law as well as the law of Louisiana there can be no liability on the part of the owner of the premises, i. e., the barge, for an injury resulting from a known or obvious danger since the invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for an injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.
The position or argument of the defendants does convict the plaintiff of contributory negligence in failing to observe the deck of the barge and be aware of defects in the floor, and more so for the reason he was a stranger thereon. However, we have no hesitancy whatever in finding the barge owner guilty of negligence in leaving the manhole or hatch covers off. It might be true, in certain cases, such as found in Regenbogen v. Southern Shipwrecking Corp. (La.App.1949) 41 So.2d 110, that the owner is under no duty to reconstruct or alter premises, it certainly does follow that the owner owes a positive duty, under the pains of being guilty of actionable negligence, not to alter the surface or top deck of a barge to create a hole into which a person, unaware andi unfamiliar therewith, might step or fall.
The premise of the defendants’ position' is that they are under no duty to alter or reconstruct the premises to obviate an obvious or known danger. We do not hold herein differently. What we do hold is that open manholes or open hatches are not normally found on barges, otherwise there would be no covers regularly provided. In the Regenbogen case cited supra, the vessel on which plaintiff fell and injured himself was being dismantled to the knowledge of the plaintiff. Therein the court found, under the particular facts thereof that the defendant discharged its duty of reasonable care to the plaintiff. See also Crittenden v. Fidelity & Casualty Co. of New York (La.App.1955) 83 So.2d 538.
Although the ship owner certainly is not the insurer of the safety of the invitee on board the ship, he is under the duty to exercise reasonable and ordinary care which includes prior discovery of reasonable discoverable conditions of the premises that might be unreasonably dangerous, and to correct such condition or warn the invitee of such danger. This duty puts upon the owner the burden and responsibility to search out and discover any reasonably foreseeable condition which may be dangerous and result in injury, especially where there is time for correcting the perilous or dangerous condition or to give warning of its presence or existence. See Manning v. Morrison Cafeterias Consol. Inc. (La.App.1964) 160 So.2d 818; Kennedy v. Columbia Cas. Co. (La.App.1965) 174 So.2d 869. See also 248 La. 869, 182 So.2d 519. The defendant barge owner breached this duty.
The alternative position of the defendants brings into focus the argument of the plaintiff. Defendants contend that if there was negligence on the part of the barge *396 owner, there was also negligence on the part of the plaintiff. In this we agree. The trial court found there was no contributory negligence on the part of the plaintiff, and therefore no need to apply the rule of comparative negligence.
We find, and so hold, that it was negligence on the part of the plaintiff to walk about the deck of a strange vessel without an awareness of where he was treading. He denies any knowledge what■ever of the presence of the open hatches, •and certainly he must have been unaware because it would be so contrary to the law of self preservation to walk, knowingly, into an open hatch. He was under a duty to watch his step. He was not familiar with his surroundings and he was under a positive duty to keep a lookout. This he failed to do, and this failure was a proximate cause of this accident.
Plaintiff relies on the case of Muratore v. United States (D.C.1951) 100 F.Supp. 276, in which the court found for the plaintiff and granted recovery for the wrongful death of the decedent who fell through an open hatch on a ship. The court absolved the decedent of contributory negligence. In this Muratore case, the tweendeck on which this open hatch was located was dark. This case is distinguishable on the facts.
In Hurst v. Point Landing, Inc. (D.C.1962) 212 F.Supp. 160, a case in which plaintiff or libelant was injured when he stepped into the open space having a width of approximately two feet, of a hatch on a barge, the court, in passing on the question of negligence of the barge owner and 'contributory negligence of the libelant, stated:
“(3-5) Libelant’s relationship to Avon-dale was that of an invitee. ‘It is generally held that one who is on premises in the performance of his duty occupies the status of an invitee or business visitor with respect to the degree of care owed him by the owner or person in charge.’ 65 C.J.S. Negligence § 43(4). Generally, the degree of care owed an invitee is that of ordinary and reasonable care commensurate with particular circumstances involved, and he who breaches such duty is answerable to the invitee for damages sustained as a result thereof. [Campbell v. All State Insurance Company, (La.App.1959) 112 So.2d 143] Reasonable care includes the duty of warning an invitee of the existence of a known dangerous condition which might imperil his safety [Mahfouz v. United Brotherhood of Carpenters, etc., (La.App.1959) 117 So.2d 295]. Avondale had actual knowledge of the defective condition of the barge and its failure to so warn libelant, who was performing the business of Avon-dale at the time, constitutes actionable negligence.
“(6) Nevertheless, we believe that had libelant looked carefully he would have seen the open, dangerous condition of the hatch and might have averted the accident. The accidental injury occurred, therefore, through the concurrent negligence of two proximate causes, the one being that of Avondale in failing to provide a safe place for libelant to perform his duties, in not giving warning of the dangerous condition, and in its failure to close the hatch cover; the second in libelant’s failure to keep an alert lookout as he walked and in stepping into the open hatch as he did. The evidence shows that an employee of Avondale erroneously called for moving of the barge by the Point Landing tug at the time of the accident. * *
In the case at bar, we find defendant barge owner guilty of negligence that was a proximate cause of the injury to plaintiff in that it failed to provide a safe place for him, it failed to warn him of the dangerous condition, for the crew members had actual notice and knowledge of the absence of the hatch covers, and they failed to cover the hatches or manholes. Equally so, we find plaintiff was guilty of negligence that was a concurrent and contributing proximate cause of his injuries in that he failed *397 to maintain a lookout as to where he walked and stepped.
In accordance with our finding that the accident occurred through the concurrent and equal negligence of both the barge owner and the plaintiff, the maritime doctrine of comparative negligence is applicable here and will be applied. We find, through the application of this doctrine, plaintiff is entitled to bear the burden of a fifty per cent reduction of a fair, reasonable and adequate award of damages.
In his written reasons for judgment, the trial court made an excellent appraisal and summation of the injuries, treatment and convalescence of the plaintiff and other damages which we deem entirely worthy of quoting.
“Immediately after plaintiff was injured on January 13, 1958, he was pulled out of the open hole and moved to approximately the middle of the barge. His pain at that time was so severe that he was unable to hold his own cigarette. After thirty minutes had elapsed from the time of injury, a doctor arrived at the barge and a shot, to relieve pain, was immediately administered. Thirty minutes from the time plaintiff received this shot he was placed in an ambulance and taken directly to the hospital. Upon entering the hospital he was rushed into the operating room where x-rays were first taken and then a diagnosis of a “markedly comminuted fracture of the left mid-tibia and upper fibula” was made. The broken leg was then placed in a cast, the first of five, which extended from the tip of his toes to the upper two-thirds of his thigh. This cast remained on for thirty-six hours until the combined effects of swelling and blisters forced its removal. A second cast was then placed on the injured leg. During the first ten days plaintiff spent in the hospital, he suffered consistent (constant) and intense pain and was able to sleep very little. A total of twenty-four days was spent in the hospital. After discharge from the hospital he was confined to bed at home for a long period of time ’after which he was allowed the use of a wheel chair until sufficient improvement was shown, at which time he graduated from the wheel chair to crutches. On March 17, 1958, April 17, 1958 and June 26, 1958 new casts were placed on his injured leg. It was not until the month of September, 1958, nine months after the accident, that a firm union of the broken leg was acquired. At this time plaintiff was still required to use crutches. During the next ten months, until June 24, 1959, plaintiff made eight one-hour visits to a physical therapist for treatment.
“Though plaintiff returned to his job in January, 1959, he is unable to put in a full day’s work without having his injured leg swell and without experiencing pain. His physician estimated that the injury had resulted in a twenty-five per cent (25%) permanent disability of the left leg. This leg, because of the injury, is shorter than the right leg. In an attempt to compensate for this, plaintiff has been fitted with a built up shoe. The duties of plaintiff’s occupation include the operation of heavy equipment. Though plaintiff, who at the time of trial was 32 years old, is able to now perform those duties, he does so under a disability and with some pain.
“As a result of plaintiff’s injury, he incurred expenses for hospitalization, medical attention, and therapy, in the amount of One Thousand Three Hundred Forty-nine and 20/100 ($1,349.20) Dollars.
“As a further result of these injuries plaintiff also suffered a loss of earnings for the year 1958 in the amount of One Thousand Eight Hundred Thirty-nine and 39/100 ($1,839.39) Dollars.”
The appellant has questioned the amount of damages awarded by the trial court to the plaintiff alleging that they are excessive and that the amount awarded for plaintiff’s loss of earnings should be discounted since plaintiff offered no proof of this amount other than his own declara *398 tions. However, in reading the written reasons for judgment and the record, we find that the factual findings as to quantum, made by the district judge who had the opportunity to view and evaluate the injury, are more than amply supported by the evidence. In support of his argument to discount the plaintiff’s loss of earnings, appellant cited the cases of Jenkins v. A. R. Blossman, Inc. (La.App.1952) 69 So.2d 131 and Mercante v. Southern Bell Telephone and Telegraph Company (La.App.1963) 148 So.2d 875. We find that these cases are not apropos to the case at issue. The plaintiff in the Mercante case actually showed a loss from his business for the previous year while he showed an increase of $3,000 in his earnings in the year he was injured over the previous year. The plaintiff in the Jenkins case offered nothing but his own testimony, and the court pointed out the ease with which he could have proved his medical expenses and his weekly earnings. The plaintiff in the case at bar testified that the partnership in which he was a half partner lost $3,678.78 and therefore, he personally lost $1,839.39. We find that the trial judge did not err in considering this loss as one element of the total damages.
Appellant further contends that the trial court abused its discretion in allowing interest to run from the date of judicial demand. In support of this argument, he cited New Amsterdam Cas. Co. v. Soileau (5 Cir. 1948) 167 F.2d 767 but in that case the lower court’s judgment was amended by the appellate court to allow legal interest from the date of judicial demand. In admiralty the allowance of interest is discretionary with the court. See Sabine Towing Co. v. Brennan (5 Cir. 1936) 85 F.2d 478. We find the case of National Airlines v. Stiles (5 Cir. 1959) 268 F.2d 400 to be controlling. While this case involved a death action, the court said, “ * * * it is equally understandable that when Congress created a right of action for 'pecuniary loss’ for death only and created it as solely an admiralty action it intended for it to be governed by the traditional admiralty conception of interest as an element of the loss suffered by the claimant.” (Emphasis by the court) See The Manhattan et al. (3 Cir. 1936) 85 F.2d 427. Therein in discussing the allowance of interest, the court said : “ * * * Damage is sustained as of a certain date. What the damage is may not be and is not affected by the time when estimated, but the damage is as found, and an award made on one date is not the equivalent of an award made at an earlier date. The delay thus enters into the late award as an element of loss, and the damage awarded is for a sum which is the equivalent of what would have been a smaller sum if earlier awarded. í|í i}c 1)
For the foregoing reasons, the judgment in favor of plaintiff is amended and reduced by one-half, or to the sum of $14,-094.30, and as thus amended, it is affirmed. Plaintiff to pay the costs of this appeal; all other costs to be paid by defendants.
Amended and affirmed.